## Joshua Gower, Jr. *vs.* James Emery & *al.*

A counsellor at law is bound to disclose by whom he was employed in the management of a cause, and that he was instructed by one person to follow the directions of another in the prosecution of the business, although the knowledge was acquired by confidential consultations as counsel and clients.

A promise of indemnity to an agent, is implied from his employment as such.

If an agent, by order of his principal, commits a trespass upon the property of another, acting *bona fide* without suspicion of wrong, he has a claim for reimbursement from his principal, for all damages he sustains thereby.

If an officer, by direction of the creditor or party in interest, attaches goods in the possession of the debtor, the law implies a promise to indemnify the officer for any damage suffered in consequence of such acts.

Assumpsit against *Emery*, *Stimpson*, and *Buxton*, on an alleged promise to indemnify the plaintiff for attaching, as deputy sheriff, a stock of goods, in the possession of one *Lawrence*, as his property, on a writ against him in favor of *Emery* and *Stimpson*. *Emery* was defaulted.

*J. D. Kinsman*, counsellor at law, was called by the plaintiff, and testified, that *Buxton* and *Stimpson* came to *Portland* with the writ, just before the goods were attached ; that *Stimpson* called on him for professional advice ; that he went with him to the lodgings of *Buxton*, and was there introduced to *Buxton*; and that he was called upon by and consulted with them professionally, as a lawyer. The counsel for the defendants here objected to the witness testifying to any communications made to him by *Buxton* and *Stimpson*, or either of them, on the ground, that he was not permitted, on legal principles, to disclose any such communications, made to him by *Buxton* and *Stimpson* in the course of professional consultation. The report states, that EMERY J., before whom the trial was, for the purposes of this trial, considering that the witness might disclose who employed him, overruled the objection and permitted him to testify. *Mr. Kinsman* then testified to facts tending to show, that *Gower* was jointly employed by *Buxton*, *Stimpson*, and *Emery*, and acted by their order. The testi-

mony is sufficiently stated in the opinion of the Court.    There
was a motion made for a new trial for a verdict against evidence;
and the whole testimony given in the case is found at length in the
report.    It seems that one _Allen_ brought an action against the
sheriff, for the misdoings of the plaintiff in making the attachment,
and prevailed.    That action was defended by _Stimpson_, and it
was in evidence, that _Buxton_ gave orders to follow _Stimpson's_ di-
rections in relation to the business.

The counsel for the defendants contended, that if no express
promise of indemnity was proved, the law would not raise one
from the facts proved; and that if the jury were satisfied, that the
attachment of the goods was made in pursuance of the orders of
_Stimpson_, then _Buxton_ was not liable in this action, because one
partner could not bind his copartner by any agreement to indem-
nify an officer for committing a trespass upon the property of a
third person, even when the act, proved to be a trespass, was sup-
posed to be legal, as when the property attached was in possession
of, and was honestly believed to belong to, the defendant in that
suit.

The jury, amongst other things, were instructed, that officers
are subject to the directions of those who seek redress by civil
suits; that if a creditor shows property to an officer and directs
him to attach it on a legal precept, and the officer neglects or re-
fuses to take it, thinking it is not the debtor's property, he is liable
to the creditor for damages for not taking it, if the property actu-
ally belongs to the debtor; that the officer may require an indem-
nifying bond before making the attachment, or if he is satisfied with
the responsibility of those who employ him, he may proceed; he
is the mere agent, executing a duty in due course of law; that no
one ought to direct another to do a wrong, and he who does a
wrong, knowing it to be such, cannot recover indemnity against
one who directs him to do it; that questions of the nicest character
often arise as to the legal ownership of property, and may vary the
rights and duties and responsibilities of attaching officers; that in
this case, _Lawrence_ being in possession of the goods, this fact was,
of itself, _prima facie_ evidence of ownership in himself; that it
was contended, strenuously, that _Buxton_ was really interested in
the suit in which the goods were attached, and if he had a mere

collateral interest in the suit, and voluntarily gave directions to make the attachment, or to follow the directions of *Stimpson*, then he is liable to the plaintiff, the same as if he had been actually named in, and a party to, the bond or writ; that if the plaintiff failed to give them satisfactory evidence of the interest of *Buxton* in the matter, and of his direction to attach the goods, or to follow the directions of *Stimpson*, their verdict should be in favor of *Buxton;* that if one person employ another to do an act which, at the time, is not, by the one employed, known to be wrong, the former is bound to indemnify the latter, and save him harmless from any damage or injury which may result from the performance of such act; that if he acted in good faith, the law will imply a promise to indemnify on the part of the principal; and that if they were satisfied, that, in truth, the plaintiff had a bond of indemnity from persons other than *Buxton*, and that it was only an afterthought to seek a remedy against him, because believed to be the most responsible, the defence was complete as to *Buxton*, and the verdict should be for him. On the subject of damages, the jury were instructed, that if they found for the plaintiff, he was entitled to recover the amount recovered by *Allen* against the sheriff and paid by the plaintiff, deducting the amount received from the sale of the goods by consent of the defendants.

The verdict for the plaintiff was taken, subject to the opinion of the Court.

*Codman & Fox*, argued for the defendants, citing 8 *Mass. R.* 370; *Foster v. Hall*, 12 *Pick.* 189; and *Chapin v. Lapham*, 20 *Pick.* 472.

*Fessenden & Deblois*, argued for the plaintiff, citing 1 *Stark. Ev.* 104; 2 *Stark. Ev.* from 395 to 399; 1 *Phillips*, 110; *Cowper*, 845; 2 *Barn. & Cr.* 745; *Johnson v. Daverne*, 19 *Johns. R.* 135; *Brandt v. Kline*, 17 *Johns. R.* 335; *Holbrook v. Holbrook*, 3 *Shepl.* 9; *Kip v. Bridgham*, 6 *Johns. R.* 158; *Blasdale v. Babcock*, 1 *Johns. R.* 517; *Chase v. Stevens*, 2 *Fairf.* 128; *Weld v. Green*, 1 *Fairf.* 20; *Bond v. Ward*, 7 *Mass. R.* 123; *Perley v. Foster*, 9 *Mass. R.* 112; *Rogers v. Sumner*, 16 *Pick.* 387; *Canada v. Southwick*, *ib.* 559; *Marsh v. Gold*, 2 *Pick.* 285; *Boyden v. Moore*, 11 *Pick.* 362; *Van Cleef v. Fleet*, 15

*Johns. R.* 147; *Wilmington* v. *Burlington,* 4 *Pick.* 174; *Story on Agency,* § 339 *and notes; Powell* v. *Newburgh,* 19 *Johns. R.* 284; *Coventry* v. *Barton,* 17 *Johns. R.* 142; *Adamson* v. *Jarvis,* 4 *Bingh.* 66; *Phelps* v. *Campbell,* 1 *Pick.* 58.

The opinion of the Court was by

Weston C. J. — The privilege of a client, in regard to confidential communications, made by him to his counsel, was fully investigated and discussed, in *Foster* v. *Hall,* 12 *Pick.* 89. It cannot be necessary to go over the same ground. We refer to that case, and the authorities there cited, as presenting a fair and full elucidation of the doctrine. It is there said, that the privilege, although extended to all cases, where the advice of counsel is sought, whether in reference to a suit contemplated or pending, or not, ought to be strictly construed; as it has a tendency to prevent a full disclosure of the truth.

Thus the attorney is bound to disclose facts, coming to his knowledge in consequence of his employment, not of the nature of confidential communications. As the execution of a deed, especially if he witnessed it, the identity or handwriting of his client; the fact that he made oath to an answer in chancery, and all other facts, not within the range of professional confidence. *Doe* v. *Andrews, Cowper,* 846; *Hurd* v. *Moring,* 1 *Carr. & P.* 372. The objection, made by the counsel for the defendant, to the testimony of *Mr. Kinsman,* we understand to have been overruled by the presiding Judge, so far as to permit him to testify, by whom he was employed.

We cannot regard this as matter of professional confidence, at least unless counsel is apprized, or has reason to believe, that his client desires that this fact should be concealed. No such inference is to be drawn from the testimony of the witness. The defendant, *Buxton,* made no intimation of a wish not to be known in the business. He solicited no advice, tending to produce such an impression, upon the mind of the witness. When the counsel delivered the writ to the officer, a fact finally brought to his recollection, the officer might well have inquired, as some controversy as to the property was apprehended, by whom he was to consider himself employed. An answer truly made to this inquiry, would

be no breach of the privilege of his client. It would disclose his principal to a party having a right to know, in a matter neither communicated as a secret, nor of a character, requiring any reserve on his part. The fact, that he was employed by *Buxton*, and was directed by him to follow the orders of *Stimpson*, might, without any violation of confidence, so far as we can discern, be made known to the officer, and was, in our judgment, testimony legally admissible.

The evidence in the case was of a character, which might satisfy the jury, that *Buxton* had an interest in the subject matter of the suit, upon which the goods were attached. The jury, having found that interest, and *Buxton* having ordered the goods to be attached, the plaintiff, in obeying his orders, acted as his agent. In such case, a promise of indemnity is implied, upon the principles of natural justice. Had the order been to do a known wrong, no such promise would have been implied; nor would, in such case, an express promise or covenant have been legally binding.

But if an agent, by order of his principal, commits a trespass upon the property of another, acting *bona fide*, without any suspicion of wrong, he has a claim for reimbursement upon his principal, for all the damages he sustains thereby. *Story on Agency*, § 339, and the cases there cited. Goods in the possession of a debtor, are apparently subject to the attachment of his creditor. But if the officer has reason to believe, that any controversy may arise in relation to the title, he may require, that the creditor shall show or point out the goods, and may insist upon an indemnity. *Bond* v. *Ward*, 7 *Mass. R.* 123. And such contracts of indemnity are enforced at law. When implied, from the direction of the creditor, or party in interest, the officer is equally entitled to be reimbursed for any damage he may have sustained.

The defendant, *Buxton*, has been charged, together with the other defendant, who was the plaintiff of record in the suit, upon which the goods were attached. It does not appear, that *Buxton* claimed to be interested, or to have a right to interfere, to the exclusion of the nominal plaintiffs. The implication rather is, that he was interested in connection with them. The other defendant has been defaulted; and we perceive no legal objection to their joint liability. It does not appear to us, that there is any error in

the instructions of the Judge, or in the measure of damages, of which the defendants have a right to complain. And the motion to set aside the verdict, as against the weight of evidence, is over-ruled.

*Judgment on the verdict.*