## JANE TURNER'S APPEAL FROM PROBATE.

Third Judicial District, New Haven, June Term, 1899.   ANDREWS, C. J.,
TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

Inquiries on cross-examination ought not to be permitted when their obvious purpose is to intimate, contrary to the fact, that another witness has testified differently from the one under examination.

The mere opinions of non-expert witnesses concerning the mental capacity of a testator are never admissible in evidence.   They become admissible only after a sufficient statement has been made of the facts upon which they are based, or after the witness has been shown to have had such personal observation of the testator as to enable him to form a reasonably correct conclusion.

What constitutes testamentary capacity is a question of law, and therefore it is not error to exclude the answer of a non-expert witness, that he does not think the testator was capable of making a will.   The common and proper form of inquiry in these cases is: Was or was not the testator in your opinion a person of sound mind?

For the purpose of illustrating the testator's mental condition it is not unusual nor improper to ask a duly qualified witness whether in his opinion the testator possessed sufficient understanding to transact the ordinary business incident to the management of his property and household affairs.

The answer of a witness, if relevant and material to the issue, and claimed

Turner's Appeal.

by the examiner, ought not to be stricken out on motion of the opposing counsel, merely because it is irresponsive to the question. The error, however, is harmless, if the answer thus excluded is afterwards repeated and admitted in response to a different question.

The statements of a testator to his attorney, not made for the purpose of obtaining legal advice, and offered as evidence tending to show his mental capacity, cannot be regarded as confidential and privileged communications.

The rule which forbids an attorney from testifying in respect to matters communicated to him in professional confidence, tends to prevent a full disclosure of the truth in court, and should therefore be somewhat strictly construed.

If this rule is invoked to exclude certain evidence, the burden is upon the objecting party to show that the communication objected to was in fact privileged.

An assignment of error which asserts merely that the trial court erred in its charge as to the burden of proof, or as to some other general topic, without further reference or specification, is insufficient.

The trial court may well refuse to charge in the language of a request, however accurate in its statement of the law, which assumes as, facts matters that are in dispute.

There is no specific rule of law that requires a trial court in charging the jury to qualify or explain a general statement which is in itself correct and unobjectionable. In a given case such omission may furnish ground for a new trial because it is apparent that in consequence thereof the jury were misled; while in another case the qualification or explanation may be plainly unnecessary for the guidance of the jury. Each case must depend in this respect upon its own peculiar circumstances.

In the present case the court charged the jury that mere physical weakness and disease, old age, eccentricities, blunted perceptions, weakening judgment and failing mind and memory, were not necessarily inconsistent with testamentary capacity. *Held* that inasmuch as it appeared from other portions of the charge that the jury were not misled by this statement into supposing that evidence of these physical and mental conditions was of no significance or importance in passing upon the question of testamentary capacity, the appellant had no just cause of complaint upon this ground.

The case of *Richmond's Appeal*, 59 Conn. 226, limited and distinguished.

Argued June 22d—decided October 5th, 1899.

APPEAL from a decree of the Court of Probate for the district of New Haven approving a certain instrument as the last will of Caroline Warner of New Haven, deceased, taken to the Superior Court in New Haven County and tried to the jury before *Shumway, J.;* verdict and judgment sustaining

the will, and appeal by the contestant for alleged errors in the rulings and charge of the court. *No error.*

There was evidence to show that the testatrix died in 1898 at the age of 79 years, leaving an estate of about $14,500. She had never married, and her nearest surviving relatives were cousins.

Jane Turner, a cousin of the testatrix, 85 years old, who received by the will a legacy of $500, appealed from the probate of the will upon the ground of the want of testamentary capacity and of undue influence.

Evidence was received tending to prove that the testatrix had executed three wills before the one in question, which were drawn by Judge Bishop, who was a witness at the trial; that the executor of the present will was a second cousin of the testatrix, and occasionally attended to some of her business at her request and according to her directions, and that, when she decided to make some changes in her then last will, he accompanied the testatrix at her request to the office of Judge Bishop, and not finding him, went with her to the office of Mr. Webb, and introduced the testatrix to him, and that Mr. Webb prepared for her a will of which he, Webb, was made the executor; that within a few weeks the testatrix, having decided to make some changes, consulted with said Mix and his sister Mrs. Potter, concerning them, and that at the request of the testatrix said Mix called upon Mr. Webb and furnished him with a memorandum of the changes she desired, and arranged with him to meet the testatrix at the residence of Mr. Mix's daughter, to complete the preparation and execution of a new will; that in accordance with such arrangement Mr. Webb soon after met the testatrix at said place, having before prepared only such parts of the new will as were to be like the former one, and, after having consulted the testatrix about the changes she desired, completed the present will, which was executed in August, 1891; that at the request of the testatrix Mr. Mix drove her and Mrs. Potter to the said house, but that he was not present during the consultations between the testatrix and Mr. Webb, nor when

the will was prepared; that at the suggestion of Mr. Webb, Mr. Mix was made executor of this will.

Said Mix at the trial in the Superior Court, having testified that he accompanied the testatrix to the office of Mr. Webb and arranged for the preparation of the present will, including the taking to Mr. Webb of the memorandum aforesaid, and upon cross-examination having testified that he was present at the hearing upon the probate of the will, at which hearing Mr. Webb testified as a witness, was asked if it was not true that he heard Mr. Webb testify that he went to the residence of Mr. Mix's daughter and did all his writing there from directions given him by the testatrix, and that he, Mr. Mix, made no corrections. Upon objection the question was excluded and the appellant excepted.

Charles H. Webster, a witness for the appellant, having testified that for six months prior to April, 1887, he had lived in the same house with the testatrix and saw her frequently every day, was asked if she had sufficient mind to intelligently dispose of her property. Upon objection of the appellee this question was excluded, and the appellant excepted to the ruling of the court.

The further examination of this witness by the appellant was as follows: "Q. Do you think she was of sound and disposing mind at that time? A. Well, her mind was weak." Upon motion of the appellee this answer was stricken out as not responsive. The appellant excepted. "Q. You may state what her condition was during the time you lived there. A. Well, this time, as I say, her mind was weak." This witness further said upon direct and cross-examination: "I cannot say about her mind . : . Her mind was weak at the time we went there." When asked if he thought her mind was unsound, the witness said in substance that he could not say as to the soundness of her mind further than that her mind was weak.

In the deposition of Dorcas Webster, wife of the last witness, the following question was asked by the appellant: "Do you think, during the time you lived in the house there with her, she was capable of transacting business?" The

witness answered, " I don't think she was capable of making a will." The question having been repeated, she answered, " I don't know what you mean by transacting business." These two questions and answers were excluded upon objection, and the appellant excepted. The following answers of this deponent were read: " She was capable of paying her grocery bill; but as for doing legal business, I don't think she was. I don't think she could go on and do business, make a will or anything like that. . . . I don't know as I think she was of unsound mind, any way."

Margaret Newton, a witness for the appellant, who had testified that she was acquainted with the testatrix and had visited her and conversed with her frequently, was asked upon direct examination whether she thought that the testatrix during the last ten years of her life was able to transact business. Upon objection this question was excluded, upon the ground that the opinion of the witness as to the ability of the testatrix to transact business generally was immaterial, but the court ruled that after the witness had stated her knowledge of the testatrix and her opportunities of observing her, she might state whether or not in her opinion she was of sound and disposing mind. The same witness upon direct examination subsequently testified: " Her mind was not as it was once, and she was not able to do as she did once—transact business or much of anything else;" and upon cross-examination, " I shouldn't call her mind strong enough to transact business alone, from what I knew of her."

Judge Bishop, a witness for the appellee, having testified to his acquaintance for many years with the testatrix, his means of observation and frequent conversations with her, was asked: " Do you recollect any of the conversations had with her at that time, any of the subjects you talked about?" The witness answered: " She would talk about what her share was under the law, . . . in substance, it was she wanted to know how much there was in the estate, how much she was likely to get out of it, and the details of the settlements of the estates, and we would talk those matters over. . . . My recollection of it is that I went to the pro-

bate court, saw Mr. Burgess afterwards, . . . told her the amount there was in the estate as appeared by inventory, and told her what Mr. Burgess had said about it, also what the judge of probate had said, . . . and what her distributive share would be after the final settlement of the estate. That was the substance of our talk. . . . Later on, the account of Sherman Warner was filed, and I submitted that report to her, and on that I remember she objected very strenuously to Mr. Burgess' fees, and gave me instructions to ask that those fees be reduced, and in pursuance of that instruction I did go before the probate court upon that question."

The appellant objected to this testimony, upon the ground that the witness was the attorney of the testatrix, and was testifying to the confidential communications made to him by his client. The court admitted the evidence, and the appellant excepted.

The appellant requested the court to charge the jury as follows: "1. If the jury shall find that it is more probable than not that decedent, at the time of the execution of the will, did not sufficiently appreciate and comprehend her relations to the appellant and the beneficiaries under said will, the character and consequences of the provisions of said will, and the nature, extent, and effect of the business which she was transacting, their verdict should be for the appellant. 2. It is admitted that Norris W. Mix was in the habit of transacting the decedent's business, and stood in confidential relations with her, and that said Mix and his sister, Mrs. Potter, brought and accompanied the decedent to the house of the daughter of Mr. Mix, where the will was executed; that Mr. Mix procured the services of the attorney who drafted the will and the witnesses to the will; that under these circumstances the burden of proof is upon the appellees, who are benefited by the provisions in favor of Mr. Mix and Mrs. Potter, to show that decedent was not unduly influenced by them in the making of these provisions. . . . Under these circumstances the burden of proof is upon Mr. Mix to show that decedent was not unduly influenced by him, in so far as the will operates in his favor."

The court did not charge as requested in the second request, but charged, in part, upon the subject of the burden of proof, that before the will should be approved as a valid will it should appear to the jury that the statutory formalities of its execution had been complied with, and that testatrix was at the time of sound and disposing mind and memory; that the burden of proving the testamentary capacity of the testatrix rested upon the proponents of the will; that the law did not require that this fact should be proven with absolute certainty; that at the end there might perhaps exist in the mind of the jurors nothing further than a strong probability that the fact was so; that the rule for determining whether the fact of testamentary capacity had been proven, was that the proponents of the will must prove the fact by a fair preponderance of evidence; that is, that "more or more satisfactory evidence must be produced in favor of the existence of that fact than is produced against it;" that if there should be an uncertainty in the minds of the jury, so that they could not say upon which side of that issue the evidence preponderated, then "the issue should be found against the party upon whom rested the burden of proving it," but that "if the evidence preponderated one way or the other, the issue should be found as the evidence preponderated;" that although the burden of proof rested upon the proponents of the will on the issue of the capacity of the testatrix to make a will, yet that the jury should not find that issue in favor of the contestant, "unless the evidence of the contestant overcame that given by the proponent in rebuttal, and was evenly balanced in the mind of the jury with all the evidence of the proponent, including the evidence of the subscribing witnesses by which the proponents had made out a *prima facie* case in the first instance;" that the burden of proving that undue influence had been exercised upon the mind of the testatrix was upon the contestant; that the existence of undue influence was not often susceptible of direct proof, but was generally proved by "the facts and circumstances surrounding the testator, preceding, pending, and following the making of the will," and that as bearing upon that ques-

tion the jury might consider "the testatrix's family relations, her condition of health, her relations to the persons claimed to have influenced her, her dependence upon and subjection to the control of such persons, and the opportunity of the latter to wield such influence," and the provisions of the will; that while from such facts and others of a like nature undue influence might be inferred without direct proof, "yet such inference was not to be drawn unfairly or unreasonably," that "the facts and circumstances ought to be of such a nature as to lead justly and reasonably to the inference that such undue influence existed and was exercised upon the testatrix so that her mind and will were affected by it, and that she was led thereby to make a different will from what she would have made if it had not existed."

The court also said: "But this burden upon the question of undue influence may be shifted or discharged whenever the business relations existing between the testatrix and the persons specially benefited by the will, or having drawn the will, or having been shown to have any part in procuring it to be drawn, is such as denotes special confidence, and gives to the party so benefited a controlling influence with the testatrix. . . . If the evidence discloses to you that his (Norris B. Mix's) relations to the testatrix were of especial confidence and trust, and that he has been benefited by his act, then . . . it is incumbent upon the proponents of the will to show that he acted fairly, and that he took no advantage of his position to induce or to procure the making of the will, or any part of it, in his favor."

In defining undue influence, the court said in its charge: "Her free agency and independence must be overcome, and she must by some domination or control exercised over her mind have been constrained to do what was against her will, and what she was unable to refuse and too weak to resist. Mere kindness of treatment of a testatrix by a legatee would not, nor would moderate and reasonable solicitation, entreaty, or persuasion, though yielded to, if done intelligently, without restraint, and from a sense of duty, vitiate a will in other respects valid."

Upon the question of testamentary capacity the court charged the jury, in part, that it was sufficient if the testatrix had such a mind and memory as would enable her to recollect and understand " the nature and condition of her property, the persons who were or should be the natural objects of her bounty, and her relations to them, the manner in which she wished to distribute it among or withhold it from them, and the scope and bearing of the provisions of the will she was making."

The court further used the following language : " Mere physical weakness or disease, eccentricities, blunted perceptions, weakening judgment, failing memory or mind are not necessarily inconsistent with testamentary capacity. One's memory may be failing, and yet his mind not be unsound ; one's mental powers may be weakening, and still sufficient capacity remain to make a will. Now the evidence which has been offered before you as to the mental condition of the testatrix at the time the will was made, and both before and after, has been given to aid you in placing before your minds a mental picture of the testatrix at the time the will was made ; and if the evidence shows that the testatrix was physically and mentally weak, that her mind or memory was impaired, that it was less than it may have been at some former period of her life, that she was odd, and that she was peculiar or eccentric, or that she may have said that she feared that she might go to the poorhouse, or that she may have had an incorrect belief as to the wrongs that may have been inflicted upon her, it does not necessarily follow that she had not testamentary capacity. You should not, and you doubtless will not, confound oddities and eccentricities and peculiarities with incapacity ; oddities, peculiarities, and eccentricities are one thing : incapacity is the question which you are to pass upon, and say whether the testatrix was incapable in the meaning of the law of making a will. Nor should you mistake a mind that is only weakened for one that is lost."

The rulings of the court in excluding the questions aforesaid asked the witnesses Mix, Mr. and Mrs. Webster, and Mar-

garet Newton, and in excluding and striking out their answers as aforesaid, in admitting the testimony of Judge Bishop, and in refusing to charge as above requested, were assigned as reasons of appeal.

The 13th and 14th reasons of appeal were in the following form: "13. The court erred in his charge to the jury as to the burden of proof. 14. The court erred in his charge to the jury as to the amount of preponderance of evidence necessary to establish a will."

Other reasons of appeal alleged error as to parts of the charge above set forth, regarding the preponderance of the evidence, the definition of undue influence, and the failure of the court to instruct the jury that disease, eccentricities and other failings or peculiarities named by the court as not inconsistent with testamentary capacity in the testatrix, were facts which should be considered by the jury as evidence bearing upon the question whether the testatrix possessed testamentary capacity.

*Henry G. Newton* and *E. P. Arvine*, for the appellant (contestant).

*William H. Williams* and *Isaac Wolfe*, for the appellee (executor).

HALL, J. The question asked the witness Mix, on cross-examination, if he had not heard Mr. Webb testify to certain facts in the Court of Probate, without correcting him, was properly excluded. It does not appear that Mr. Mix was present when the last will was prepared, nor that he had testified to what occurred at that time. The facts implied in the question did not therefore contradict his testimony. Nor would Mr. Mix have been called upon to correct a witness in the Court of Probate who, he may have thought, was testifying incorrectly. Such inquiries should not be permitted when their evident purpose is to intimate that some other witness has testified differently from the one under examination.

The rulings of the court excluding certain questions asked the witnesses Mr. and Mrs. Webster and Mrs. Newton, and excluding or striking out their answers, do not furnish sufficient grounds for granting a new trial: first, because if such rulings were erroneous the errors seem to have been corrected by afterwards permitting these witnesses to fully answer the questions which had been excluded; and second, because the record does not so clearly state either the grounds upon which the questions and answers were excluded, or upon which they were objected to, that we can say with certainty that the rulings were erroneous.

The inquiries excluded called for answers from non-expert witnesses in the nature of opinion evidence, concerning the mental condition of the testatrix. The mere opinions of such witnesses are never received. They are admissible only after a sufficient statement of the particular facts upon which they are based, or after the witness has been shown to have sufficient means and opportunities of personal observation to enable him to form a reasonably correct conclusion. They are received rather as statements of impressions or conclusions in the nature of facts of which the witness has knowledge, than as opinions. Their reception is rendered necessary because of the difficulty of so detailing and so reproducing the numerous particular facts upon which they are founded as to produce upon the triers the impression received by the witness, or to enable them to draw a fair inference from such facts. The value of such a statement when given by a candid and impartial witness, depends largely upon his intelligence and upon his opportunities and habits of observation. 1 Greenl. on Ev. § 440 and note; *Cavendish* v. *Troy*, 41 Vt. 99; *Conn. Mut. Life Ins. Co.* v. *Lathrop*, 111 U. S. 612, 619; *Sydleman* v. *Beckwith*, 43 Conn. 9; *Ryan* v. *Bristol*, 63 id. 26; *Kimberly's Appeal*, 68 id. 428.

The record before us does not assume to give the examination of these witnesses in full. If the trial court excluded these questions because the witnesses had not been shown to have had sufficient opportunities of observation to qualify them to express an opinion or conclusion upon the subject of

the inquiries, we cannot, from the testimony as set forth in the finding, hold that such decision was erroneous. When in trials involving the question of testamentary capacity it is desired that a witness who has testified to sufficient facts should also give his opinion as to the mental condition of the testator, a common and proper form of inquiry is, " Was or was not the testator in your opinion a person of sound mind? " For the purpose of showing the extent of mental impairment it is not unusual nor improper to ask a duly qualified witness whether in his opinion the testator possessed sufficient understanding to be able to transact the ordinary business matters incident to the management of his household affairs and property. *Keithley* v. *Stafford*, 126 Ill. 507, 520. The mental power required to attend to such ordinary affairs may be regarded as so much a matter of common knowledge and experience as to be a fair standard of comparison readily understood by both witness and jury, by which to illustrate the degree of intelligence of one whose mental condition is the subject of investigation. It has been held to be proper to permit a witness to compare the mental power of the testator to that of " an average child of seven or eight years." *Richmond's Appeal*, 59 Conn. 226, 242. A witness may of course always testify to the fact, when such fact is within his personal knowledge, that the testator's mental state was such that he was or was not able to transact business, or to do any other particular act which would indicate the condition of his mind.

It is not error to refuse to allow a non-expert witness to state his opinion whether a testator was capable of making a will. *Crowell* v. *Kirk*, 3 Dev. 355, 358; *Farrell* v. *Brennan*, 32 Mo. 328; *White* v. *Bailey*, 10 Mich. 155, 159; *Fairchild* v. *Bascomb*, 35 Vt. 398, 414; *Schneider* v. *Manning*, 121 Ill. 376, 386. What constitutes testamentary capacity is a question of law which witnesses and jurors are not ordinarily competent to answer correctly. Their views upon that question would probably differ from each other as well as from the rule laid down by our law upon that subject. Various tests of the capacity essential to enable one to make a valid will

have been adopted even by the courts. It was formerly held that imbecility of mind not amounting to idiocy or lunacy would not incapacitate one from making a will. *Blanchard* v. *Nestle*, 3 Denio, 37 ; *Stewart* v. *Lispenard*, 26 Wend. 255. Some courts have held the mental ability to execute a valid deed or contract to be the proper measure of testamentary capacity. *Stewart* v. *Elliott*, 2 Mackey, 307 ; *Coleman* v. *Robertson*, 17 Ala. 84. Others, that the possession of sufficient mind and memory for the transaction of ordinary business is the true test of capacity to make a valid will. *Barnes* v. *Barnes*, 66 Me. 286. In this State one may make a valid will though mentally incapable of transacting business generally. The test which we apply is the ability of the testator at the time of the execution of the will to understand the nature and elements of the particular transaction of making a will in which he is engaged, and it is a part of the duty of the court in charging the jury, to instruct them as to the elements of the act of intelligently disposing of one's property by will, which the testator should have been capable of comprehending. *St. Leger's Appeal*, 34 Conn. 434, 448. It was not error to exclude the answer of the witness Mrs. Webster, that she did not think the testatrix capable of making a will.

The fact that the testatrix's mind was weak, testified to by Charles H. Webster, in answer to the question of appellant's counsel, was material and relevant to the issue, and having been claimed by counsel examining the witness, the answer should not have been stricken out upon motion of the opposing counsel, merely because it was irresponsive. Such an order of the court, however, furnishes no ground for complaint when, as in this case, counsel is permitted to put another question to which the excluded answer is responsive.

There was no error in the ruling of the court admitting the testimony of Judge Bishop concerning his conversations with the testatrix. The burden rested upon the appellant to show that the conversations occurred while the testatrix was consulting the witness professionally as an employed attorney. *Carroll* v. *Sprague*, 59 Cal. 655. At the time of the objection no preliminary examination seems to have been

made for the purpose of proving that fact, nor has that fact been found by the court. The only facts found in connection with the ruling are, that the witness had testified to his acquaintance with the testatrix for many years, to having had frequent opportunities of observing her and frequent conversations with her. That the facts which appear elsewhere in the record with reference to his having acted as her attorney, were known to the court when the objection was made, cannot be assumed. Even those facts fail to show that these conversations occurred while the testatrix was consulting Judge Bishop as her attorney.

But the rule which forbids an attorney from disclosing as a witness matters communicated to him in professional confidence, should be strictly construed as tending to prevent a full disclosure of the truth in court, and we think that the testimony admitted does not amount to a disclosure by the witness of a confidential and privileged communication made to him as an attorney, by his client, even if we assume the existence of the relation of attorney and client between them at the time of the conversations in question. *Foster* v. *Hall*, 12 Pick. 89, 98; *Gower* v. *Emery*, 18 Me. 79. The testimony was, in substance, merely that she talked to him about the settlement of an estate; that she wished him to ascertain for her how much she was likely to receive from it, which he did, and that she directed him to appear before the Court of Probate to procure the reduction of certain fees to which she objected. Such a request by a client to his attorney, made for the purpose of obtaining information for the former's benefit, upon a matter of fact, and not for the purpose of asking the attorney's advice, ought not to be regarded as a privileged communication. Weeks on Attorneys (2d ed.), p. 328. An attorney may properly be required to testify by whom he is employed and in what capacity. *Satterlee* v. *Bliss*, 36 Cal. 489; *Gower* v. *Emery*, 18 Me. 79.

The appellant has no reason to complain of the failure of the court to charge the jury in the language of the first request. The court correctly defined testamentary capacity, and charged that the burden of proving that the testatrix

possessed such capacity at the time of the execution of the will rested upon the proponents of the will. The court further charged that in case there should be "an uncertainty in the minds of the jury so that they could not say upon which side of that issue the evidence preponderated, their verdict should be against the party upon whom rested the burden of proving it." This was more favorable to the appellant than the instruction asked for, which was, in effect, that the appellant was entitled to a verdict if the evidence showed a want of testamentary capacity.

The court properly refused to charge in the language of the second request. The record discloses no admission by the appellee of the facts stated in the request. It was incumbent upon the appellant to prove the asserted confidential relations. *Richmond's Appeal*, 59 Conn. 226. The court rightly left it to the jury to decide whether the claimed relations of confidence and trust existed between the testatrix and Mr. Mix, and correctly instructed them that if the evidence disclosed the existence of such relations it became "incumbent upon the proponents of the will to show that he (Mix) acted fairly, and that he took no advantage of his position to induce or to procure the making of the will, or any part of it, in his favor."

The language of the charge defining undue influence was approved by this court in the case of *Dale's Appeal*, 57 Conn. 127, 145.

The 13th and 14th reasons of appeal present no questions for our consideration. Clearly it was not intended by these assignments of error to say that parts of the charge manifestly favorable to the appellants, were erroneous; as, for example, that the burden of proving testamentary capacity rested upon the appellee, and that it should be proved by a fair preponderance of evidence. The purport of these reasons of appeal is that there was error in something which the court said in its charge upon these subjects. They fail to comply with the rule. Practice Book, p. 258, Rule XIV, § 1; *Simmonds* v. *Holmes*, 61 Conn. 1, 9.

In *Richmond's Appeal, supra,* p. 245, the trial judge in its

charge to the jury made use of this language : " Mere physical weakness or disease, old age, eccentricities, blunted perceptions, weakening judgment, failing memory or mind, are not necessarily inconsistent with testamentary capacity. One's memory may be failing and yet his mind not be unsound. One's mental powers may be weakening, and still sufficient testamentary capacity remain to make a will." In granting a new trial upon an appeal, this court said concerning that part of the charge : " This is undoubtedly true, but such facts are admissible in evidence upon the question of capacity, and it was mainly by proof of their existence that the appellants sought to establish the want of such capacity. The court therefore in charging as it did, and in entirely failing to make reference in any portion of the charge to the significance of such facts as evidence, would seem rather, in effect, to have withdrawn them from under the eyes of the jury, and from their consideration of them as such evidence, and thereby may, and we fear must, have misled the jury, to the injury of the appellants."

The appellant claims that the court made the same mistake in the case at bar. A distinction may be drawn between this case and *Richmond's Appeal.* In this case the court did not entirely fail to refer to the evidence of a weakened mind, etc. ; on the contrary, it directly refers to the evidence of these facts in connection with the other evidence indicating the mental condition of the testatrix, as proper to be considered by the jury in passing on the question of testamentary capacity, which was accurately defined by the court. All the evidence bearing on the question of capacity was unqualifiedly submitted to the jury for their consideration. The court may properly submit the evidence in such manner as to intimate an opinion in respect to its weight, as undoubtedly was done in this case, so long as it does not exceed the limits of its powers by a practical withdrawal of competent evidence from consideration by the jury. *Kimberly's Appeal,* 68 Conn. 428, 441 ; *First Baptist Church* v. *Rouse,* 21 id. 160, 167 ; *State* v. *Rome,* 64 id. 329, 337–339 ; *State* v. *Smith,* 65 id. 283.

In *Richmond's Appeal* there was a total absence of any

reference to the evidence on which the appellant relied; there was error in the admission of testimony and error in other parts of the charge, which were mainly relied on for obtaining a new trial. Indeed the error in not commenting on testimony of a weakened mind, etc., is hardly specified in the reasons of appeal, and but slightly referred to in briefs of counsel.

It would be difficult, however, to distinguish the two cases, if the portion of the opinion above quoted is treated as establishing a rule of law. We think it should not be so treated. The failure to caution the jury in respect to the weight of evidence is error *per se* in the case of the admission of the testimony of an accomplice; but ordinarily the propriety of comment on testimony depends on the circumstances of each case. It is not true that a failure to comment on the weight of evidence of a weakened mind, etc., in connection with a statement that such facts, if proved, do not necessarily establish testamentary incapacity, must always be treated as error. The circumstances of a case may be such that a total failure to comment may seem to be equivalent to a withdrawal of the evidence, and so mislead the jury to the injury of a party, as we thought in *Richmond's Appeal;* but the circumstances may be such that a slight reference to such testimony is not equivalent to its withdrawal, but is simply a proper exercise of the discretion of the judge in intimating his opinion as to the weight of evidence, as is the case at bar. The question is always largely one of fact—does the charge of the court, in view of all the circumstances, pass beyond the limit of proper comment so as to submit the testimony unfairly or practically invade the province of the jury in passing on the weight of evidence? If so, a new trial may be granted. The charge of the court below does not call for a new trial for such reason.

There is no error.

In this opinion the other judges concurred.