[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM FILED MARCH 17, 1997
The plaintiff's contention in this case is that he was terminated by ACE because he informed representatives of the French company who had bought ACE that the company had violated pollution laws. Mr. Stern, the president, was deposed by plaintiff's counsel and was asked when he first consulted his lawyer regarding the plaintiff's employment and the termination of that employment. It is the court's understanding that ACE denies terminating the plaintiff because of the above mentioned disclosures but represents through its officers that the plaintiff was fired for other reasons.
It is apparent that the timing of when Mr. Stern consulted with his counsel over the plaintiff and his termination is highly relevant on the issue of the actual reason for which Mr. Olson, the plaintiff, was terminated.
When Stern was asked this question at the deposition, he answered it, giving a certain specific date. The privilege was either not claimed or the attorney-client privilege was claimed but Mr. Stern was allowed to answer the question in any event. The appropriate course of action to take when a question is asked at a deposition, a response to which is claimed would violate a privilege such as that against self-incrimination or the attorney-client privilege, is to refuse to answer the question and have a judge rule on the claim of privilege. WestportNational Bank v. Wood, 31 Conn. Sup. 266, 328, A.2d 724 (1974).
Counsel for the plaintiff now seeks billing records of counsel for ACE in an effort to try to impeach Mr. Stern as to CT Page 2270 the date he actually first spoke to his lawyers concerning Mr. Olson's employment and termination. Counsel does not claim that she is entitled to learn the contents of any consultation and agrees that the billing records may be redacted insofar as they go beyond merely indicating the date of the consultation and the fact that a consultation took place concerning Olson and his termination.
At § 90 of McCormick on Evidence (Vol. 1) it is stated that: "The traditional and still generally applicable rule denies the privilege for the fact of consultation or employment, including the component facts of the identity of the client, such identifying facts about him (sic) as his (sic) address and occupation, the identity of the lawyer and the payment and amount of fees," pages 331-32.
In State v. Manning, 162 Conn. 112 (1971), an attorney for a defendant who was charged with risk of injury was called to the stand and asked two questions, the relevance of which to the proceedings not being clear: the lawyer was asked whether he had had "certain conversations with Mr. Manning" on a particular day and, secondly, he was asked "Where were those conversations held?" The defendant argued that the trial court erred in permitting the lawyer to answer the questions. The court broadly held the attorney-client privilege could not be claimed. The court cited Turner's Appeal, 72 Conn. 305, 318 (1899), for the broad proposition that "an attorney may properly be requested to answer the questions by whom he is employed and in what capacity." The attorney is only bound to remain silent as to "information born of confidential communication." Here the court held no error was committed by allowing the attorney to answer the two questions "since neither related to communications between the attorney and his client." 162 Conn., pp. 120-21.
In Turner's Appeal, 72 Conn. 305 (1899), the case involved an appeal from a probate decree and a witness was called whom the testatrix consulted as her lawyer. An issue in the case was the mental capacity of the testatrix. The court held there was no error in allowing the witness to answer questions concerning conversations he had as an attorney with the testatrix. The court noted that: "The testimony was, in substance, merely that she talked to him about the settlement of an estate; that she wished him to ascertain for her how much she was likely to receive from it, and which he did, and that she directed him to appear before the Court of Probate to procure the reduction of certain fees to CT Page 2271 which she objected. Such a request by a client to his attorney, made for the purpose of asking the attorney's advice, ought not to be regarded as a privileged communication . . . An attorney may properly be required to testify by whom he is employed and in what capacity." Id. 318; cf. Behrens v. Hironimus, 170 F.2d 627,628 (CA 4, 1948); People v. Warden of County Jail, 270 N.Y.S. 362,365 (1934). Courts have held that the privilege is not violated if attorneys are compelled to turn over billing records. In Rehimv. Kimberly Clark Corp., 18 CONN. L. RPTR. 177, 3 Conn.Ops. 64 (1997), the plaintiff's sued a company and its attorney for malicious prosecution, vexatious suit, abuse of process, intentional infliction of emotional distress, false imprisonment and libel. The claim was that the company, through its attorneys, made a false complaint to the Chief State's Attorney's Office that the plaintiff committed perjury in pursuing a Worker's Compensation claim against the company. The lawyers from the company were sued and the plaintiff's argued the billing records were relevant because they could demonstrate the extent of the lawyer's activity regarding the criminal action. The court found relevance and then went on to decide that billing records are not protected by the attorney-client privilege. Absent special circumstances where disclosure would in effect reveal confidential communications, client identity and fee information are not privileged. Id. 65. Also see, United States v. Ricks,776 F.2d 455 (CA 4, 1985) (rev. on other grounds), where government was attempting to show defendant was an organizer and manager of a criminal enterprise. Attorney-client privilege would not prevent disclosure of billing records which would establish defendant and his allies paid trial counsel for members of their drug distribution network over $20,000 in a four-year period. Cf.In re: Two Grand Jury Subpenal Duces Tecum, 793 F.2d 69 (CA2, 1986). The authority for requiring a turning over the billing records in this case appears overwhelming although some of the cases seem conclusory in the sense that they appear to translate into a proposition that if we say something is not a communication it really is not a communication of client confidence. What does it really mean to say that revealing in what capacity a client talked to an attorney does not disclose a client communication? In Turner's Appeal it was not merely revealed that the client went to the lawyer's office at a certain date and time, it was disclosed she went to talk to him about an estate — that indicates what they talked about if not the contents of the conversation. In Rehim the billing records, if they are to be relevant, will indicate on a certain date the client and lawyer talked about making a complaint to the police, if not by CT Page 2272 explicitly so stated then by natural inference that as night follows day if the lawyer sends a client a bill for time spent talking to a prosecutor he did so at the client's request. What these cases seem to say is that, although a lawyer must divulge the capacity in which he was contacted — for what employment — and although that involves a communication as to what in general the client and lawyer talked about, there is a certain societal interest in permitting these limited disclosures. Beyond that further inquiry is not permitted. Under these cases then the billing records should be turned over to the plaintiff.
There is a further reason why these records should be turned over which, under the circumstances of this case, is analogous to a waiver analysis and comports with the court's reasoning at pages 41-42 of the April 19, 1996 decision. Wigmore says at Vol. 8, § 2327, pages 636: "There is always also the objective consideration that when (the client's) conduct touches a certain point of disclosure, fairness requires that his (sic) privilege shall cease whether he intended the result or not. He cannot be allowed after disclosing as much as he pleases, to withhold the remainder. He may elect to withhold or disclose but after a certain point his election must remain final". This goes too far for what occurred here to hold that by answering this question Mr. Stern waived his attorney-client privilege as to the substance of any conversations with counsel for ACE regarding Mr. Olson's termination. On the other hand, it would be unfair to allow Mr. Stern to give testimony that allows him to place his position and that of his company in a positive light — I did not even speak to my attorney regarding Olson's termination until a date that may be long after any suspicion could arise about my real motives for doing so — and then at the same time avoid impeachment by records showing such conversations took place at, for example, an earlier and different date.
The billing records should be turned over to plaintiff's counsel and redacted to the extent that they go beyond indicating the date of any consultation and the fact that a consultation took place concerning Olson and his termination.
Corradino, J.
CT Page 2273