[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON THE PLAINTIFF'S MOTION TO SERVE ADDITIONAL DISCLOSURE AND PRODUCTION I STATEMENT OF THE CASE
On April 10, 2001, the plaintiff, Arlene Strom, filed a complaint against the defendant, Middlesex Mutual Assurance Company, in which she seeks to recover underinsured motorist benefits. The plaintiff alleges the following facts in her complaint. The plaintiff was involved in a motor vehicle accident on September 27, 1997, which caused her to sustain serious injuries and financial damages. The plaintiff recovered $20,000 from the negligent driver and this payment "exhausted all applicable motor vehicle coverage from the tortfeaser." The plaintiff filed the instant action against the defendant claiming that the $20,000 recovery failed to compensate her fully for her injuries and that she is entitled to further compensation from the defendant under the underinsured motorist policy issued by the defendant to her.
The defendant filed its answer and special defenses to the complaint on June 5, 2001. On June 7, 2001, the plaintiff filed a motion to serve interrogatories and requests production on the defendant beyond the standard discovery provided under Practice Book Sections 13-6(b) and 13-9 (a). The defendant filed an objection to the motion on June 21, 2001. Both parties have filed memoranda supporting their positions.
 II DISCUSSION
Discovery is generally governed by the Practice Book, Chapter 13. Most pertinent to the present controversy is Practice Book § 13-6(b) and § 13-9 (a). § 13-6 (b) provides that "[i]n all personal injury actions alleging liability based on the operation or ownership of a motor vehicle . . . the interrogatories served shall be limited to those set forth in Forms 106.1OA, 106.1OB and/or 106.1OC of the rules of practice, unless upon motion, the judicial authority determines that such interrogatories are inappropriate or inadequate in the particular CT Page 15713 action." Similarly, in regard to requests for production, § 13-9 (a) provides that "[i]n all personal injury actions alleging liability based on the operation or ownership of a motor vehicle . . . the requests for production shall be limited to those set forth in Forms 106.11A, 106.11B and/or 106.11C of the rules of practice, unless, upon motion, the judicial authority determines that such requests for production are inappropriate or inadequate in the particular action."
The plaintiff moves for supplementary discovery contending that an underinsured motorist claim is unique, combining aspects of both tort and contract law, and that the standard discovery under the Practice Book is inadequate. On the other hand, the defendant argues that this case essentially involves a motor vehicle liability case, and that the standard discovery is adequate for the plaintiff. The court finds that the plaintiff's position is more persuasive.
The short response to the defendant's position is that this case is not a personal injury action as contemplated by or within the meaning of Sections 13-6 and 13-9 of the Practice Book. By definition, an underinsured motorist case is a contract action based on the insurance policy issued by the defendant to its insured. Certainly, this is acontract action where liability is partly premised on the negligent operation of a motor vehicle, but it is the policy provisions of the insurance contract which create the defendant's liability for this negligence, not the tort itself. Stated differently, the negligence of the tortfeasor driver would not matter at all if the plaintiff has not also satisfied the other necessary conditions of the insurance policy, for example, the payment of the premiums.
In different factual contexts, this point has been fully articulated by our Supreme Court. "The substance of the cause of action in the first trial [involving the negligent driver] was an action in tort . . . An action to recover under an automobile insurance policy, on the other hand, is not an action in tort but, rather, an action in contract. `The obligation of [an] insurance carrier providing uninsured motorist coverage as a part of its liability insurance coverage on the automobile of the insured person is a contractual obligation arising under the policy of insurance.'" (Citations omitted; emphasis in the original.)Mazziotti v. Allstate Ins. Co., 240 Conn. 799, 817 (1997), quoting, StateFarm Mutual Automobile Ins. Co. v. Board of Regents of the UniversitySystem of Georgia, 226 Ga. 310, 311, 174 S.E.2d 920 (1970); see also,Haynes v. Yale New Haven Hospital, 243 Conn. 17, 24, 699 A.2d 964 (1997) ("[U]nderinsured motorist benefits are sui generis. They are contractual, but they depend on principles of tort liability and damages.") CT Page 15714
While some of the standard discovery is applicable to an underinsured motorist case, other parts of this discovery have no relevance at all. For example, the first question of Standard Form 106.1OA asks about the defendant's date of birth and motor vehicle operator's license. Clearly, an underinsured motorist carrier will not have a birth date or an individual motor vehicle operator's license number. Interrogatories seven, eight and nine ask questions about any basic or umbrella liability insurance obtained by the defendant covering the incident described in the complaint. In an uninsured motorist case, the insurance policy itself is at issue not a liability policy obtained by the defendant insurance carrier. Similarly, interrogatory 12 asks whether any of the defendants are "deceased." An insurance company may become dissolved or defunct, but it does not become "deceased."
From this perspective, the standard discovery is more than just inappropriate or inadequate. The standard discovery simply does not apply to an underinsured motorist case, and a motion to file supplemental discovery is not even necessary. Caldwell v. Shelby Ins. Co., Superior Court, judicial district of Ansonia/Milford, Docket No. 056454 (October 19, 1998, Flynn, J.). The standard interrogatories do not allow any questions concerning the insurance contract being sued upon. Legitimate areas of inquiry concern whether the defendant insurer contests the existence of an underinsured motorist policy covering the plaintiff during the applicable time period, and if so, whether the insurer contests compliance with coverage requirements. The standard interrogatories do not provide any questions in these areas. In short, the design and intent of the standard discovery make it quite plain that in too many respects, this discovery is insufficient to address the issues of an underinsured motorist case.
The defendant also objects to the motion on the ground that the discovery seeks privileged attorney client or work product material. This objection appears to be directed to the plaintiff's request for the defendant to produce "any and all written documents, records, reports, memoranda, letters and notes regarding" any investigations of the incident. Judge Hodgson recently explained the scope of the attorney client privilege as follows:
 The attorney/client privilege recognized at common law is not, in fact, a general protection of all transactions that involve an attorney and a client, nor can all of the facts a party knows be immunized from discovery merely by telling them to a lawyer. Rather, what is privileged are the communications between client and attorney when made in confidence for the purpose of seeking or giving legal advice. CT Page 15715 Olson v. Accessory Controls Equipment Corp., 254 Conn. 145, 158 (2000); Ullman v. State, 230 Conn. 698, 711, 713 (1994); Doyle v. Reeves, 112 Conn. 521, 523 (1931). A request that an attorney obtain information from outside sources is not privileged. Turner's Appeal, 72 Conn. 305, 318
(1899). Because the privilege "tends to prevent a full disclosure of the truth in court," it is to be strictly construed. Ullman v. State, supra, 230 Conn. 710-11, quoting C. Tait J. LaPlante, Connecticut Evidence (2d Ed. 1988); Turners' Appeal, supra, 72 Conn. 318. As the Supreme Court has stated recently, its approach is "to apply the privilege where the communications at issue are `inextricably linked to the giving of legal advice.'" Olson v. Accessory Control Equipment Corp., supra, 254 Conn. 164.
Reichhold Chem. v. Hartford A. I., Superior Court, judicial district of Waterbury, Complex Litigation Docket, Docket No. 160018S (Aug. 15, 2000, Hodgson, J.). In this same case, Judge Hodgson explained the following regarding the work product privilege:
 Pursuant to Practice Book § 13-3, materials "prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative" are not subject to discovery unless the party seeking discovery makes "a showing that the party seeking discovery has substantial need of the materials in the preparation of the case and is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Section 13-3 provides that the mental impressions, conclusions, opinion or legal theories of an attorney are exempt from such discovery, even if the need for the materials themselves has been demonstrated. Where a client and counsel have worked together on the creation of documents, the attorneys participation must have been with regard to duties "normally attended to by attorneys," Stanley Works v. New Britain Redevelopment Agency, 155 Conn. 86, 95 (1967); and even such participation does not necessarily make a document immune to discovery, Id., Hickman v. Taylor, 329 U.S. 495, 511, 67 S.Ct. 385, 91 L.Ed. 451 (1947).
Reichhold Chem. v. Hartford A. I., supra. Both parties agree that the CT Page 15716 plaintiff has not established any exceptions to the attorney client or work product privileges so as to require the defendant to produce such material. However, the more poignant question is whether there exists anything responsive to the discovery requests that may be appropriately characterized as such privileged material, particularly when reports and information prepared by insurance companies as part of their investigation of a claim prior to litigation are generally held to be discoverable and not subject to these privileges. See, e.g., ReichholdChem. v. Hartford A. I., supra; Page v. Dimaggio Plumbing Heating,
Superior Court, judicial district of Danbury, Docket No. 334003, (November 15, 2000, Hiller, J.); Litwak v. Lemons, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 0250838,1 Conn. L. Rptr. 778 (June, 19, 1990, Jones, J.).
In any event, the court will not reach or resolve this issue at this time on this record. It is clear that all the material requested is not protected by such privileges and the defendant cannot refuse to produceanything responsive to the specific discovery requests at issue simply because some of it may be protected. The burden rests on the defendant to establish that responsive information or documents are protected from production, and this burden cannot be met by broad, generalized claims that a privilege applies. See generally, Itoba Ltd. v. LEP Group PLC,930 F. Sup. 36, 43 (D.Conn.); In Re Perrier Botttled Water Litigation,138 F.R.D. 348, 351-352 (D.Conn.) In conclusion, as to this issue, the court overrules without prejudice the defendant's objections based on the attorney client and work product privileges and the defendant has leave to reassert these claims with particularity as part of the defendant's response to the supplemental discovery.
The defendant's next objection is that the plaintiff filed the standard discovery at the same time she filed her motion for additional discovery. Although this practice may be understandable considering the unsettled nature of the law in this area, it is not one that the court encourages. The court agrees that there is some overlap in the supplemental and standard discovery, and the defendant should not be required to answer the same questions twice. If the defendant has not yet answered the standard discovery, it shall be required at this time to respond only to the additional discovery. If otherwise, the defendant may respond to the supplemental discovery by indicating, as appropriate, that, the information requested has been previously provided.
The defendant's next objection is that some of the requested information is not in its possession. This is not an appropriate objection to discovery. If the defendant does not have information responsive to a discovery request, this fact should be stated as a CT Page 15717 response, not asserted as an objection. Similarly, the defendant's argument that the plaintiff already has the material being requested is also misplaced in this particular context. For example, this argument has been directed to the production of the insurance policy at issue, but in its answer, the defendant has denied the description of the policy's provisions as alleged in the complaint. To the extent there is some question about the exact policy providing coverage during the period at issue or about the precise terms of the policy, these issues may be addressed by the defendant's production of the policy it maintains is applicable.
 III CONCLUSION
Therefore, for these reasons, the plaintiff's motion to serve additional disclosure and production is hereby granted, and the defendant's objection to the motion is overruled, except that consistent with this ruling, the defendant shall have leave to file objections to the specific discovery requests, including objections based on the attorney client and work product privileges.
So ordered this 30th day of November 2001.
STEVENS, J.