[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] RULING ON MOTIONS TO QUASH AND FOR PROTECTIVE ORDER
The claims of the plaintiff in the above-captioned case have been resolved; however, a crossclaim filed by the defendants against third parties, Milton L. Jacobson, Glenn M. Gordon, and the law firm of Brown, Jacobson, Jewett Landone, ("crossclaim defendants") is still pending. These crossclaim defendants filed a notice of deposition of Donald R. Beebe, who for several years represented the defendants/crossclaim plaintiffs, Julius Rytman, Dora Rytman, and several businesses controlled by the Rytmans (collectively referred to as "the Rytmans").
The Rytmans have moved to quash the subpoena issued to their former counsel, Attorney Beebe, and they have moved for a protective order precluding the crossclaim defendants from deposing him and from requiring production of the documents listed in the subpoena duces tecum issued to him in connection with the deposition. The Rytmans assert that they are entitled to such relief because the crossclaim defendants are seeking material protected from discovery by the attorney-client privilege.
Attorney Beebe, who withdrew as counsel in the above-captioned case, filed a motion to quash and for a protective order on his own behalf, seeking an order "forbidding any questions to be put to the deponent which would result in the deponent producing information that is protected by the attorney client and/or the attorney work product CT Page 16070 privileges, nor regarding the above, and that Attorney Beebe not be required to produce any documents which are protected by the attorney work product and/or attorney client privileges . . ." Attorney Beebe also seeks an order, if the deposition is permitted, "that no questions be put to the deponent concerning his communications with his clients nor his observations and impressions of his clients during any communications nor concerning his mental impressions and that Attorney Beebe not be required to produce any documents pertaining to the above subjects."
Counsel for the crossclaim defendants has objected to Rytman's motion and has advised the court officer that his objection to that motion also applies to Attorney Beebe's motion, and that he does not intend to file a separate objection to Attorney Beebe's motion.
Factual background
On October 16, 2000, the crossclaim defendants issued a notice of deposition stating their intention to depose Attorney Beebe "in the above entitled action for use at trial." They issued a subpoena duces tecum requiring Attorney Beebe to attend a deposition on November 9, 2001, "then and there to testify what you know in a certain cause therein pending, wherein Connecticut National Bank is the plaintiff and Julius Rytman, et al are the defendants . . . and you are further commanded to bring with you and produce at the same time and place: See Exhibit A."
The Text of Exhibit A is as follows: "Any and all documents, notes, memoranda created at, or as a result of, any and all meetings, telephone conferences with Julius Rytman on November 1, 1987."
In their crossclaims, the Rytmans allege, with regard to a transaction between the Rytmans and third parties that was related to the Rytmans assuming an obligation to Connecticut National Bank, that the crossclaim defendants, as attorneys, committed legal malpractice, breached their fiduciary duty to the Rytmans, and violated the Connecticut Unfair Trade Practices Act ("CUTPA"), § 42-110a. The transaction involved an agreement signed by Julius Rytman on November 1, 1987.
Scope of discovery
The Connecticut Practice Book, at § 13-2, authorizes "discovery of information or disclosure, production and inspection of papers, books or documents material to the subject matter involved in the pending action, which are not privileged. . . . if the disclosure sought would be of assistance in the prosecution or defense of the action and. . . . if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." CT Page 16071
Section 13-3 provides that "a party may obtain . . . discovery of documents and tangible things otherwise discoverable under Section 13-2 and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the case and is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the judicialauthority shall not order disclosure of the mental impressions, conclusiong, opinions, or legal theories of an attorney or other representative of a party concerning the litigation."
Does the attorney-client privilege preclude the deposition?
The crossclaim defendants assert that they seek to depose Attorney Beebe "to ascertain the state of mind of Julius Rytman at the time of the signing of what has become referred to as the "October Agreement' on November 1, 1987." They also state that they "seek to determine whether Julius Rytman had sought Attorney Beebe's opinion as to: the debt to the Kofkoffs; the condition of the chickens and their potential disposal prior to or simultaneous with seeking advice of the same subject from the Rytman's (sic) then counsel, Milton L. Jacobson." The crossclaim defendants explain that they seek to "gain insight as to Julius Rytman's appearance, level of cognizance, and intellectual competence, etc." because Mr. Rytman has testified that he was "in a fog" from medication at the time he signed the agreement, on the same day he met with Attorney Beebe.
The movants appear to believe that the fact that an attorney has represented a client bars any and all questions to the attorney about the client. The third-party defendants, on the other hand, appear to believe that if the attorney and documents in his possession are a likely source of information, he may be deposed like any other witness. The true state of the law lies between these positions.
The attorney-client privilege recognized at common law is not, in fact, a general and total bar to discovery of any and all transactions and contacts that involve an attorney and a client. Rather, what is privileged is the communications between client and attorney when made in confidence for the purpose of seeking or giving legal advice. Olson v.Accessory Controls Equipment-Corp., 254 Conn. 145, 158 (2000); Ullmannv. State, 230 Conn. 698; 711, 713 (1994); Doyle v. Reeves, 112 Conn. 521,523 (1931). A request, for example, that an attorney obtain information from outside sources is not privileged. Turner's Appeal, 72 Conn. 305,318 (1899). CT Page 16072
Because the privilege "tends to prevent a full disclosure of the truth in court," it is to be strictly construed. Ullmann v. State, supra,230 Conn. 710-11, quoting C. Tait J. LaPlante, Connecticut Evidence (2d Ed. 1988); and Turners' Appeal, supra, 72 Conn. 318. The Connecticut Supreme Court has stated that the proper approach is "to apply the privilege where the communications at issue are "inextricably linked to the giving of legal advice." Olson v. Accessory Control EquipmentCorp., supra, 254 Conn. 164.
With regard to documents, the Supreme Court has similarly approved a case-by-case inquiry into the primary purpose of the document. If that purpose is to solicit legal advice based on the information supplied, the privilege applies. Olson v. Accessory Controls Equipment Corp., supra,254 Conn. 163, quoting Hercules, Inc. v. Exxon Corp., 434 F. Sup. 136,143 (D.Del. 1977). The Connecticut court cited with approval in Olson
the conclusion in Cuno, Inc. v. Pall Corp., 121 F.R.D. 198, 204
(E.D.N.Y. 1988) that "where a lawyer mixes legal and business advice the communication is not privileged "unless the communication is designed to meet problems which can fairly be characterized as predominantly legal."Olson v. Accessory Controls Equipment Corp., supra, 254 Conn. 163.
The standard approved by the Supreme Court plainly does not lead to the conclusion that Attorney Beebe may not be deposed at all on any subject that bears on the Rytmans or their conduct. It likewise does not lead to the conclusion that he can be asked absolutely any question that would elicit information that the third party defendants would find useful.
It is not possible for the court to determine in advance which questions at the deposition of Attorney Beebe may invade the actual province of the attorney-client privilege, as defined above, and which will not. Similarly, the court cannot determine in the abstract whether any of the documents sought in the subpoena duces tecum meet the standard for protection either in whole or in part. It will be necessary for Attorney Beebe to attend the deposition if it is duly rescheduled and to answer such questions and provide such subpoenaed documents or portions of documents as do not request or contain privileged communications. If any party seeks review of the propriety of an invocation of the privilege, that party must present the court with a record adequate for a ruling on the specific question or document at issue.
The party invoking a privilege has the burden of proving that the privilege applies. Babcock v. Bridgeport Hospital, 251 Conn. 790, 847-48
(1999).
Does the work product rule preclude the discovery sought?
CT Page 16073
Attorney Beebe advances the further objection that the crossclaim defendants are barred from inquiring into information or obtaining documents that are not discoverable under the work product doctrine set forth in Practice Book § 13-3, which is quoted above. Attorney Beebe asserts that some documents that come within the scope of the description of the documents sought in the subpoena duces tecum constitute work product. The court has no way of knowing for which documents this claim is made, and no way, upon the present record, of determining the validity of the characterization as to each such document. While a party asserting that a question or subpoena requests information or a document that is protected as work product must establish that it actually is such, § 13-3 allocates to the party seeking discovery the burden of proving that, under the standard set forth in that provision, the item is nevertheless discoverable.
The court cannot make a determination that any particular question will be asked at the deposition that elicits work product, or that if it does so, it will without the justification envisioned in § 13-3. It will be necessary for the parties to make and present to the court a record adequate for adjudication of any claim of work product, including a transcript of the actual question asked or identification of the particular part of a document claimed to be work product, organized in an orderly fashion so that the opponent may identify and the court may adjudicate each specific item at issue, in the event that the parties disagree about the nature of particular items.
Conclusion
The motions to quash the notice of deposition are denied. The motions for protective order concerning compliance with the subpoena duces tecum are denied. The deponent may not withhold any document described in the subpoena on the ground of privilege unless he submits to the court for incamera inspection each document which in whole or identified part is claimed to be privileged, with a clear and succinct explanation of the basis for the claim of privilege. The justification shall be provided to the crossclaim defendants so that they may respond to the claim of privilege as to each item in dispute.
 Beverly J. Hodgson Judge of the Superior Court