Lipscomb, J.
This suit was brought on a judgment of the commercial court of Hew Orleans, state of Louisiana. The transcript is attested by the clerk, with the seal of the court. It bears the certificate of the judge, that the person who certified as clerk is the clerk of the court; that he knows his handwriting, and that his certificate is in due form. Then follows the certificate of the governor under the seal of the state, that 0. Watts who certified as judge is judge of the commercial court; and to this is added the certificate of Wm. Bryan, the Texan consul, to the identity of the governor. The seal of the state and of the court and the hand writing of the judge and the governor were proved.
This is the evidence that went to the jury, and the judge charged-that it was conclusive. Exceptions were taken to the admissibility of the evidence, and the charge of the judge as to the conclusive character of the foreign judgment.
Two questions are presented for our consideration. The first is, as to the sufficiency of the authentication of the judgment; and secondly, as to the charge of the judge on the effect-of the judgment. It must be borne in mind that in the adjudication of this case, we are-not governed or influenced by the constitution of the United States, and the acts of congress passed in pursuance of the powers therein conferred, as this suit was brought under the laws of the republic, long-anterior to the annexation of Texas to the United States.
On the question of the sufficiency of the authentication of the-record of the judgment given in evidence, the case of Church v. Hubbart, 2 Cranch, 187, is believed to be a leading one, and of undisputed authority in all the subsequent cases decided by the supreme-court of the United' States. In that case the authentication of a. judgment in the kingdom of Portugal was presented to the consideration of the court, and the doctrine was then so well settled as to render much investigation at this time useless. Chief Justice Marshall,, with his usual felicity of expression and perspicuity of manner, laid down three ways in which foreign judgments may be proven, and that oue of them must be observed, unless impediments are shown to-exist that would let in secondary evidence: 1st. By an exemplification under the great seal; 2d. By a copy, proved to be a correct copy;. *(282) and 3d. By the certificate of an officer authorized by law, which certificate must of itself be properly authenticated.
It cannot be contended that the proof in this case was made under either the second or third mode specified; it is therefore manifest that if it can be sustained at all, it must be by the first. There is no ambiguity in the words “ great seal..” It is the seal of the nation, no matter whether the government be a monarchy or a republic; and all courts are bound judicially by this insignia of nationality. It is by this seal, the act to which it is appended is stamped with the highest and most solemn sanction. It is authentic per se. Is the seal of the state of Louisiana of that character? Does it assert for itself any attribute of nationality? Out of her own territorial limits, is she recognized in any way by other governments as a sovereignty, having an independent political existence? Certainly not. In all such aspects her own sovereignty is merged in the grand political confederacy of which she *is a member. Foreign nations cannot know that from their peculiar internal organization, the states, as to their own internal policy, are independent sovereignties; and that, •as to any matter of jurisdiction which belongs to them, they are independent. The seal of a state, therefore, would not in foreign courts give the sanction of authority per se to her public acts and records. We may know these peculiarities. We may believe, too, that the executive of the United States is not supposed to know who is charged with the administration of the executive department in any one of the states, but it is only individually, not judicially, that we know these facts. We are, however, bound judicially to know the great seal of the republic, without knowing the respective subdivisions of the political institutions of which that republic is composed, or their relative position with the common head. Foreign governments can have nothing to do with these regulations — they know nothing of them.
It will perhaps be said that if this be true, there is no mode of '.authenticating a judgment of one of the states of the Union in a foreign court. Such a conclusion would not be correct, for though we admit that from the peculiarities of that constitution, forming what has been called the political absurdity of an i/inperium in imperio, the authentication could with difficulty be obtained, yet such foreign judgment could still be proven by a copy proved to be a correct copy, under the second mode pointed out. To obtain such proof would be as easy .and cost as little as the transcript given in evidence in the court below. If impediments should be presented, so as to render it not possible to obtain the evidence in either of the ways *(283) specified, a resort could be bad to secondary evidence, on the authority of Chief Justice Marshall in the case above cited.
We do not say, however, that a record could not be verified by the great seal of the republic of the United States, but we do say that it cannot be proven by the seal of one of the states; at all events, not until it was shown that insurmountable impediments interposed to procuring the evidence in one of the modes recognized for obtaining the best evidence. Should secondary evidence have to be resorted to, it is not possible now to say what that would be, because it would, depend as it always does, on the particular circumstances presented* by the case. None of the facts were shown in the case before us to authorize the reception of secondary evidence, nor was it offered as such; we are of the opinion, then, that there was error in admitting the evidence excepted to in the court below.
The second point presented for our consideration is on the charge of the judge, as to the effect of the foreign judgment. He charged the jury that it was conclusive. This is believed to be in strict accordance with the established doctrine in the English adjudications, and it is sustained on some very good grounds; but it is believed to be contrary to the current of authorities in the courts of the several states of the American Union, in cases not on the judgments of a sister state, and it is believed to have been the prevailing doctrine in the several states under the old confederacy, to treat a judgment of another state as only frima facie evidence of the debt, but since the adoption of the constitution, the judgments of the several states are held with few exceptions, to be conclusive. All other foreign judgments, in the absence of legislative enactments, are held in most of the states, to be only jfrima facie evidence and will admit of almost every defense that could have been set up to the original action. See authorities in Cow. and Hill’s notes, 3 Phil. Ev. 894.
We do not design to discuss the comparative merits of the conclusion to which the American authorities would lead us. It is now a matter of very little consequence, as it will be of rare occurrence to bring a suit upon a judgment not of one of our sister states in our state courts. Suits brought
by aliens will generally be in the United States court, and if brought in our courts on the judgment of a sister state, under the construction that has obtained firm ground, we shall be bound to regard them as conclusive on the parties, subject to very few exceptions. On all other judgments we shall be under no such restraint, and between the conflicting decisions we shall feel inclined to yield to the authority of the generality of American decisions, and hold them to be only frima facie evidence of the debt. *(284) This would certainly be the safer course where the suit was between the original parties; and no right of a third person intervening, we would not feel ourselves called on to extend courtesy to an alien judgment farther.
We believe the court below erred in admitting the transcript of the judgment of the commercial court to go in evidence to the jury; and that the court also erred in its charge as to the legal effect of that testimony. The judgment must, therefore, be reversed, and the cause remanded and a venire faeias de novo be awarded in that court.