## Missouri, Kansas & Texas Railway Company of Texas v. M. J. Brantley et al.

### Decided March 15, 1901.

**1.—Railroads—Contributory Negligence—Failure to Look and Listen at Crossing.**

The court should not charge that, as a matter of law, the failure of one approaching a railway crossing to look and listen for trains would be negligence, the question being one for the jury, and the inquiry in such case being, did the party injured, considering all the surrounding circumstances, act as a person of ordinary prudence would have acted. See evidence held not to show contributory negligence on the part of the deceased, who, in attempting to cross a railway track near a station, was struck by a fast express train.

**2.—Release of Damages—Mental Incapacity.**

A release of damages for injuries received at a railway crossing was not binding on the releasor or his family where it was executed at a time when he was sick from the effects of the injuries, suffering great mental and physical pain, and was never in a normal mental condition from the date of the accident until his death.

**3.—Same—Ratification.**

The fact that the wife of the deceased, after his death, used part of the money received for the release, was not conclusive proof of ratification, and it was competent for her to testify that she did not intend thereby to ratify the settlement for the damages, and did not know that using part of the money would have that effect.

**4.—Evidence—Mental Condition—Nonexpert Witnesses.**

It was competent for nonexpert witnesses to testify as to the mental condition of deceased prior to, at the date of, and subsequent to the execution of the release, where they stated the facts upon which their conclusions were based.

**5.—Continuance—Surprise.**

There was no reversible error in overruling an application for a continuance sought on the ground that plaintiff's supplemental pleading alleged a matter causing surprise, where, when the case had been first called for trial, such surprise was urged and the case reset for a date nine days ahead, and the application for continuance did not show the existence of any evidence that was not used at the trial, and it was not made to appear that other and different evidence could likely be procured.

Appeal from Grayson.   Tried below before Hon. Don A. Bliss.

T. S. Miller and Head, Dillard & Muse, for appellant.

Webb & Jones, for appellee.

GILL, ASSOCIATE JUSTICE.—This suit was brought by appellees to recover damages for the death of M. C. Brantley, which was alleged to have been caused by the negligence of appellant. Deceased was the husband of M. J. Brantley and the father of her six children, the other appellees. A trial by jury resulted in a verdict and judgment for appellees for $5150, from which the appellant railway company has appealed.

The injuries were alleged to have been received in a crossing accident, and the negligence charged against defendant below was failure to give the statutory signals on approaching the crossing, running the train at an excessive rate of speed, failure to keep proper lookout, and allowing obstructions to the view on the side of its track and right of way.

Defendant denied the charges of negligence, and pleaded contributory negligence on the part of deceased in failing to exercise his senses to discover the approach of the train. Defendant also pleaded as a defense a settlement made by deceased, by the terms of which the defendant was discharged from all liability by reason of the accident, in consideration of the sum of $200, the receipt of which was acknowledged. It was also pleaded in defense that Mrs. Brantley ratified this settlement after her husband's death.

In avoidance of the release appellees pleaded that at the date of the execution of the release deceased was mentally incompetent to bind himself by the settlement, and denied the alleged ratification on the part of Mrs. Brantley. A return of the $200 was offered, and that sum was paid into the registry of the court.

On September 16, 1899, the deceased went in a two-horse wagon to the town of Tioga to carry a load of corn. He was driving a horse and a mule. After unloading the corn he started home. In doing so, he approached the railroad crossing in said town, driving in an ordinary trot. Just as he got to the crossing he was seen to check his team and make an effort to pull them back off the track. At that instant the engine of the south-bound passenger train struck his team, killing the horse, crippling the mule, and inflicting upon deceased injuries from which he died on the 13th of October, 1899.

The train which caused the injury was known as the "Katy Flyer." It was behind time, and was traveling at a speed variously estimated at from thirty-five to fifty miles an hour. If the whistle was sounded at all, it occurred 2700 feet north of the crossing, when one blast was given for the station of Tioga which it was approaching. The evidence is ample to sustain the finding that from that time on neither whistle nor bell was sounded nor any other warning given of its approach except the usual noise of a moving train. The depot was 700 feet north of the

crossing, but the train neither stopped at the depot nor checked its speed in passing. On the side of the crossing from which deceased approached there were various buildings which obstructed the view toward the north, and on a siding between him and the main track was a string of box cars which made it impossible for him to see a train approaching from that direction until he was very near or practically on the crossing. As indicating the speed of the train, it was shown that it proceeded half a mile beyond the crossing before it was stopped. It was then backed up to the point of the accident.

We are of opinion that the negligence of the defendant was established, and that the accident and consequent death of M. C. Brantley was the proximate result thereof. The testimony of deceased was not taken prior to his death, nor were any statements or declarations of his adduced. So far as this phase of the case is concerned, it is just as if he had been instantly killed. The burden of proof was upon defendant to establish contributory negligence. Taking into consideration the fact that the depot was north of the crossing, and a place where trains may be ordinarily expected to stop, and that in starting again it would not only make much noise, accompanied by the ringing of the bell, and that at that distance from the depot it would not have acquired a great speed; and considering the further fact that deceased's view of the direction from which the train approached was obstructed, as shown above, and that he had the right to assume that the whistle would be sounded or the bell kept ringing in approaching the crossing, we can not concur in appellant's contention that he was shown to be guilty of contributory negligence. This view is strengthened when we remember that deceased had lived in that neighborhood only a short time. He did not live in the town of Tioga, and is not shown to have known the time which the "Flyer" was due at that point, or that it did not habitually stop at that station. The court may not charge the jury that it is the duty of one approaching a railway crossing to look and listen for approaching trains, and that a failure to do so would be negligence. Nor can we hold, as matter of law, that a failure to do so is negligence. The inquiry is, did deceased, considering all the surrounding circumstances, act as a person of ordinary prudence would have acted in driving to the crossing as he did? The jury have answered this inquiry in the affirmative, and under the facts of this case we do not feel authorized to disturb the finding. It is plain that had the statutory signals been given the accident would not have occurred. We therefore determine the question of primary liability in favor of appellees.

Objections are urged against portions of the main charge, and assignments of error are also predicated upon the refusal to give requested special charges bearing upon the issues of negligence and contributory negligence. We do not deem it necessary to discuss them. We are of opinion that they present no harmful error and should not be sustained. The objections urged to the admission of evidence tending to show the speed of the train and to the effect that it was running faster than usual

are also without merit, the usual speed of the train having been shown by other witnesses.

The release pleaded in bar of the action is in the following language: "In consideration of the sum of two hundred dollars, to me in hand paid by the Missouri, Kansas & Texas Railway of Texas, I, the undersigned, of Tioga, Texas, hereby release and forever discharge said railway company from all claims and demands which I now have or may have against it by reason of personal injuries to myself and death of horse and damage to mule and wagon and harness, for all damage to my person and property received in and resulting from an accident at or near Tioga, on the 16th of September, 1889, as follows, to wit: While crossing the railroad at Tioga on September 16, 1899, my team was hit, killing one horse, damaging the mule, wagon and harness, and injuring myself in the back and head and shocking my nervous system, and for any and all injury to myself, person, and property resulting from or occasioned by said accident. Witness my hand and seal at Tioga, this the 27th day of September, 1899. M. C. Brantley, J. W. Given."

This release was executed by deceased at his home on the date it bears, and the consideration named was paid him in the form of a check given by one Given, the claim agent of appellant. It would serve no useful purpose to set out in detail the evidence bearing upon its execution and delivery. The testimony on appellees' side of the issue supports the conclusion that it was executed at a time when deceased was sick at his home from the effects of his injuries and was suffering great mental and physical pain. That deceased was never in a normal mental condition from the date of the accident until his death, and that from a time prior to the execution of the release until his death, he was of unsound mind and not mentally capable of binding himself by contract. We therefore conclude that the release was not binding upon deceased at the date of its execution, and that he did not subsequently ratify it.

Appellant complains of the charge of the court in which the issue of mental capacity and ratification was submitted. The assignments upon this issue have been carefully considered, and we have reached the conclusion that they are without merit. The charge fairly and clearly submits the issue both of ratification by deceased and of ratification of Mrs. M. J. Brantley after her husband's death.

Appellant assigns as error the admission in evidence of the opinion of nonexpert witnesses as to the condition of the mind of deceased prior to, at the date of, and subsequent to, the execution of the release. These witnesses first detailed to the jury the facts upon which their opinions were based, and we understand the rule to be that when this is done the opinion of the witness is admissible. The objection urged goes rather to the weight than to the admissibility of the testimony.

Subsequent to her husband's death Mrs. Brantley used some of the money received by her husband in the compromise, and it is urged that this was conclusive proof of ratification on her part. Appellant also complains that the trial court admitted, over objection, her testimony

to the effect that she did not intend thereby to ratify the settlement and did not know it would have that effect. In Railway v. Brazzil, 78 Texas, 314, it is held that evidence of the use of the money with knowledge of the source from whence it came is evidence of ratification, but it is nowhere held that it amounts to conclusive proof of ratification. So, in this case, it was permissible for her to testify that she had no such purpose, and whether her acts amounted to a ratification was a question for the jury. We do not feel authorized under the state of the evidence as disclosed by the record to disturb their finding.

Appellees contend that the release in question is no bar to this action, even if admitted to be valid and binding, as against the cause of action which accrued to deceased by reason of the negligence of appellant. This contention is based upon the language of the statute, article 3017, giving a cause of action to the heirs of deceased, his death being due to the wrongful act of appellant. This contention has much force and finds considerable support in the authorities. Wallace v. Stephens, 74 Texas, 559; Donahue v. Drexel, 56 Am. Rep., 886; 8 Enc. of Law, 2 ed., 858, 859, and authorities cited in notes. It is unnecessary, however, to decide the point, and we forbear to express an opinion on the question. We have already indicated that in our opinion no reversible error has been shown, either in the admission of evidence or in the submission of the cause to the jury.

It appears from an agreement in the record that special charges Nos. 2 and 7, on the issue of the execution and ratification of the release, were not in fact given. Appellant's second proposition under the eighth assignment of error is therefore without merit. The first proposition under said assignment, to the effect that there was no evidence of mental unsoundness on the part of deceased, has already been disposed of by the facts found.

The only other assignment we deem it necessary to notice complains of the refusal of the trial court to grant appellant's first application for continuance. The basis of the application was an allegation that the allegation of mental unsoundness pleaded by appellees in avoidance of the release, the plea appearing in a supplemental petition filed February 19, 1900, was a surprise to defendant, as no mention of the release or of the mental unsoundness had been made in any former pleading. The case was called for trial February 19th, and the defendant then claiming surprise at the contents of the plea, the cause was reset for March 1st, at which time the application for continuance was again urged upon the same ground. The defendant had actual notice of the contents of the plea nine days before the trial. The application does not show the existence of any evidence on the issue which was not used at the trial, nor is it made to appear either by the application or the developments of the trial that other and different evidence could likely be adduced. The amended motion for new trial was not filed until March 17, 1900, and it is not therein averred that any additional evidence upon the issue has been discovered, or can likely be adduced upon another trial. We are

of opinion that, under the circumstances, no abuse of discretion is shown on the part of the trial judge.

Because we have found no reversible error in the record, the judgment of the trial court is affirmed.

*Affirmed.*

Writ of error refused.