WESTERN UNION TELEGRAPH COMPANY v. C. W. GIFFIN.

Decided November 13, 1901.

**1.—Assignment of Error.**

An assignment that "the court erred in overruling defendant's demurrer and special exceptions to the plaintiff's petition," will not, under the rule, be considered because too general.

**2.—Telegraph Company—Burial Message—Mental Suffering—Charge—Proximate Result.**

Where, in an action of damages because of nondelivery of a message relating to the burial of a child, the evidence showed that plaintiff suffered mental distress at not meeting any relatives on reaching his destination with the child's body, and at being compelled to put the corpse in the warehouse and leave it there alone while he went in search of relatives and to have the grave dug, and that these consequences were reasonably within the contemplation of the parties, plaintiff having informed the agent receiving the message of its purpose and the circumstances affecting the contemplated burial, a general instruction that the jury might find for plaintiff such damages as "are the proximate result of the failure to transmit and deliver the message," without defining proximate result, was sufficient in the absence of any requested charge on that point.

**3.—Same—Damages Not Too Remote.**

The fact that the message, addressed to a relative, did not specifically request him to meet plaintiff at the depot and to have the grave dug, and that whether he would have done so or not was dependent entirely on his voluntary action, did not render the damages too remote.

Appeal from Presidio. Tried below before Hon. A. M. Walthall.

*Beall & Kemp,* for appellant.

*P. H. Clarke,* for appellee.

JAMES, CHIEF JUSTICE.—This case on a former appeal is reported in 57 Southwestern Reporter, 327. Our conclusions of fact are:

That about daylight on the morning of December 20, 1897, plaintiff left Toyahville for Marfa with the corpse of his baby on his way to Sabinal, Texas, to inter it in the family burial ground at Sabinal. On reaching Marfa about 7 p. m. of that day, he went to the telegraph office of defendant, and wrote a telegram addressed to A. J. Durham, his brother-in-law, at Sabinal, relative to the burial of his child, and the agent suggested it could be made shorter and wrote the following telegram: "Marfa, Texas, Dec. 20, 1897.—A. J. Durham, Sabinal, Texas: Will be there tomorrow to bury our baby. (Signed) C. W. Giffin." That this telegram was delivered to the operator to be sent, plaintiff paying the charge of 50 cents. That at the time of delivering same he told the operator that he was sending it to his brother-in-law at Sabinal, who had charge of the family cemetery; that he had other relatives at Sabinal; that his wife's people lived there; that his reasons for sending it were that his relatives at Sabinal might be notified in time to meet him on arriving there with the corpse and accompany him to the grave, and also that all arrangements might be made for the funeral without delay on plaintiff's arrival at the depot. Plaintiff left Marfa on the same evening's train, arriving at Sabinal with the corpse about 10 a. m. the following morning. No relatives were at the depot to meet him, and he found from the operator that he had seen Durham that morning, but had not received the message. He accordingly was obliged to place the corpse in the warehouse of the railroad company, and go in search of Durham or other relatives to have arrangements made for burying it. That he first found Mr. Peters, a merchant, also a brother-in-law, who immediately went in quest of parties to dig the grave, and in about two hours returned with two Mexican gravediggers; that plaintiff returned to the corpse as soon as Peters had found the Mexicans; that he then went with Peters, a sister-in-law, and the Mexicans to the home of Durham, about three-eighths of a mile from the depot, and that then Durham, who had charge of the family cemetery, went in a wagon with plaintiff, Peters, said sister-in-law, and the Mexicans to prepare a grave. On reaching there Durham designated the place, and the Mexicans went to work. Plaintiff then returned to the corpse in the warehouse, and later Peters and the others who had accompanied him to the graveyard came with a wagon and took the body with plaintiff to the grave, where they arrived about 5 p. m., before the grave was completed. That the other relatives did not come to the depot nor escort the remains to the grave, except Ross Kennedy, plaintiff's father-in-law, who reached the grave after the arrival of the corpse. The reason for the failure of the telegram was that defendant had cut the wire connecting Marfa with Sabinal at Spofford for the purpose of connecting the eastern end of the wire with the City of Mexico, in order to facilitate its business with Mexico, snowstorms having interfered with its regular connections north of Marfa. This fact, it seems, was not known to the operator at Marfa when he received the telegram for transmission. Plaintiff testified that he was mortified at not meeting Durham nor any escort of relatives on the arrival of the train at Sabinal to accom-

pany and take the remains to the graveyard; that he was obliged, to his mortification and regret, to put the corpse into the warehouse, and leaving it there, like ordinary freight, without any person to stay with it, was obliged to go to search for Durham, or other relatives, to have arrangements made for the interment.

The verdict was for plaintiff for $750.

The charge of the court submitted the issue of negligence, and if that fact should be found, and that plaintiff thereby suffered damages, and that such damages were the proximate result of the failure to transmit and deliver the message, and that defendant has not shown sufficient excuse to justify or excuse such failure, and that the agent had notice of the purpose of plaintiff in sending the message, then to find for plaintiff and assess his damages at such sum as the jury believed from the evidence would be a fair and reasonable compensation to him for his damages sustained, and in estimating damages, if they found for plaintiff, the jury may take into consideration mental anguish and suffering, if any, as elements of damage.

The first assignment of error is: "The court erred in overruling defendant's demurrer and special exceptions to the plaintiff's petition." This we can not consider under the rules, it being too general. Besides there is not a proposition of law advanced under the assignment.

The second assignment is: "The court erred in charging the jury that they might find for the plaintiff such damages as 'are the proximate result of the failure to transmit and deliver the telegraphic message,' without defining proximate result, or prescribing any rule of law by which the jury could determine the correct measure of damages; and under said charge, the jury might have considered, as the proximate result of the failure to deliver said telegram, any and all mental distress testified to by plaintiff in the case."

The charge was correct in law in stating that plaintiff could recover such damages as were the proximate result of the failure to deliver the telegram. No effort was made by requested charges to have this instruction more specific. It appears to be the complaint that under such charge the jury "might have considered any and all mental distress testified to by plaintiff." This is all that is specified. When we go to the evidence we find that plaintiff testified to having suffered mental distress at not meeting his brother-in-law Durham, or any escort of relatives, on reaching Sabinal with the child's body; at being obliged to put the corpse into the warehouse and leaving it there alone while he went forth to search for relatives to arrange for the interment. We think that for mental distress suffered from such causes and in such connection recovery is allowable. It seems to us, in view of what plaintiff told appellant's agent at Marfa when sending the message, that these consequences were reasonably in contemplation of the parties, in the event of a failure to convey the message. Telegraph Co. v. Broesche, 72 Texas, 654. We also for this reason overrule the third assignment of error, which is that the court erred in refusing the special instruction that plaintiff could not recover dam-

ages on account of not having his wife's relatives meet him at the depot at Sabinal on his arrival with the remains of his child. Also the fourth assignment which is: "The court erred in refusing defendant's special charge, that the plaintiff was not entitled to recover for mental suffering, if any, occasioned by the three or four hours delay in the burial of his child; these damages being too remote and such as were not within the contemplation of the parties at time the telegram was sent, as the telegram did not advise the addressee to meet plaintiff at the depot, nor to dig the grave, and whether he would have done so or not was entirely dependent upon the voluntary action of the party to whom the telegram was addressed."

The fifth assignment is that the verdict is excessive. This we do not sustain.

*Affirmed.*