## Royal Neighbors of America v. Hayes.

(Decided November 19, 1912.)

### Appeal from Jefferson Circuit Court (Common Pleas Branch, First Division).

1   Insurance — Fraternal — Evidence—Baptismal Certificate—Competency of.—A baptismal certificate taken from the records of a church in Ireland and certified to by the parish priest, accompanied by a certificate of a notary public that the copy thereof is correct and certified in due form according to the general custom in use in Ireland, and accompanied by a certificate of a United States Consul to the effect that the notary public's signature is his true signature, and that he was a notary public at the time of signing it, is not admissible in evidence unless accompanied by distinct testimony that the baptism was registered in due form according to the laws of the sovereignty of Ireland.

2.  Insurance—Fraternal—Evidence—Peremptory Instruction.—In an action to recover on a certificate of insurance issued by a fraternal benefit society, evidence examined, and held that a peremptory instruction in favor of defendant was properly refused.

3.  Same—Instructions—Error.—In an action on a certificate of insurance, where the court instructed the jury in effect to find for plaintiff unless they believed the statement made by insured with respect to her age was substantially untrue and that the defendant, acting reasonably, and in accordance with the practice usual among fraternal insurance societies, under similar circumstances, would not have accepted the application and issued the certificate if the substantial truth had been stated, it was not error, under the facts of the case, to refuse to qualify the in-

struction by the additional words "even if the jury should believe that such untrue answer, if such it was, was not made with knowledge of its falsity, or with the intention to mislead or deceive the company."

SAMUEL W. GREENE for appellant.

A. SCOTT BULLITT and JAMES HEMPHILL for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

On July 19, 1905, the Royal Neighbors of America, a fraternal beneficiary society, issued to Kate Hayes a certificate of insurance for $1,000, payable on her death to her husband, Albert F. Hayes. Kate Hayes died a member and in good standing on April 19, 1912. The society declined to pay the insurance, and plaintiff, Albert F. Hayes, brought this action to recover the amount due on the policy. The jury returned a verdict in favor of plaintiff, judgment was entered accordingly, and the society appeals.

The defendant is a fraternal beneficiary society, organized under the laws of the State of Illinois. By the statute of that State under which defendant is organized, a fraternal beneficiary society cannot receive into membership any person past 60 years of age.

In her application for membership, decedent, Kate Hayes, answered question No. 2 as follows:

"I was born in the State of Ireland on the 12th day of December, 1861, and am now between 44 and 45 years of age."

Under the head of "Remarks" is the following statement, made by defendant's medical examiner:

"She was rejected in Nov., 1904. She says she had a bad cold and thought she had asthma and told the physician so. I find her hale and hearty doing all her own work and apparently from the examination as well as can be.

"She was born in Ireland and does not know much about the family history as she left there.

"She gave it to me the best she knew how.

"She had to guess at her age and all the family history.

"Believe her to be honest and doing her best to give the account right."

The society defended on two grounds: First, the insured made fraudulent and material misrepresentations as to her age; second, the contract was *ultra vires* under defendant's charter, because the insured was over sixty years of age when the certificate was issued.

Upon these issues the defendant assumed the burden of proof. It first introduced several witnesses, who testified to the age of the insured, basing their opinions on her general appearance and her ability to get about. Three or four of these witnesses were of the opinion that when she became a member of the society she was past 60 years of age. The recorder of the society, who collected the premiums from the insured, and two or three others, who, in the absence of the recorder, also collected the premiums, gave it as their opinion that the insured, at the time she was admitted into the society, was past 60. They stated that it was the general remark in the society at the time that the insured was too old to be admitted. The matter was spoken of several times. Notwithstanding this fact, they continued to collect the premiums up to the time of the death of the insured. Several of the witnesses introduced by the defendant testified that in their opinions the insured, when admitted to the order was between 45 and 55 years of age.

It appears that the insured's name prior to her marriage was Kate Heraghty. There was introduced in evidence what purported to be the baptismal certificate of Kittie Heraghty, which is as follows:

"Aughagower, Westport, Feb. 15th, 1911.
"1844
"Decbr 12th Kitty—Thomas & Mary Heraghty, Mineen Sp. Edward Heraghty Mary Ryder.
"I certify the above is a true copy of an entry in the Register of Baptisms for the parish of Aughagower.
(Signed)    "JOHN FLATLEY, P. P."

Accompanying the baptismal certificate is the certificate of Francis Egan, a notary public in the County of Mayo, Ireland, to the effect that the record or document, of which a copy is annexed, is of record in the care and custody of the Rev. John Flatley, parish priest of the Parish of Aughagower, Westport, in the County of Mayo, Ireland, and that the "copy thereof is correct and certified in due form according to the general cus-

tom in use in Ireland," and that the copy is in the handwriting of the Rev. John Flatley, and that the signature, "John Flatley, P. P.," is the signature of the parish priest for the time being of the Parish of Aughagower.

There is also attached to the certificate of baptism the certificate of Hunter Sharp, United States Consul for the Port of Belfast, to the effect that Francis Egan, whose true signature appeared upon the annexed certificate, and before whom the same had been made and executed, "is and was at the time of signing same, a notary public at Westport, in the County of Mayo, Ireland," and that to his official acts in that capacity full faith and credit were due.

The defendant also introduced the deposition of Julia Heraty, known as Sister Jaronima, and who at the time she testified was a sister of charity of the Catholic Church, living at St. Joseph's Hospital, in Lexington, Ky. Sister Jaronima first testified that she was 65 years of age. Upon being asked if she was not born in 1843, she answered: "Yes, that was exactly in my mind before you spoke; I was born in 1843." She stated that her sister, Katherine, was "just two years" younger. Her father was Thomas Heraty, and her mother, Mary Heraty. Upon being asked if all of her brothers and sisters were baptized in Aughagower, she said: "Every one of them baptized in Aughagower; I think so; I never heard anything to the contrary." She also stated that they called her sister Katherine "Katie." On cross-examination, she was asked several questions in regard to the ages of her brothers and sisters, and the time she and her sister lived in Ireland, and in response to these questions, she answered: "I don't know."

For the defendant, several witnesses, who had known the insured when she was a young lady, and for periods varying from 10 to 25 years, testified that judging from her appearance and her ability to work and get about, she was in the neighborhood of between 40 and 45 of age in July, 1905.

Plaintiff, Albert Hayes, a machinist, testified that he always took his wife to be about 10 years younger than he was. When he first met her, she was a young lady and very active, and was strong and well even up to within a few days before she died. During all that time she was able to do her own work.

Maggie Gilligan, who was 46 when she testified, said that she had known the insured for about 25 years, and that she always took the insured to be older than she was. Dr. Lillian Brewer, the medical examiner, testified that when she examined the insured, she appeared to be hale, hearty and all right; that had the insured appeared older than the age given by her, she would not have put it down. In the application, the color of the insured's hair is stated to be brown. Kate Berry testified that she was a niece of the insured, and had known the insured for 15 years. She said that Aughagower was a little parish in Ireland over by the coast. That Westport is quite a distance from Aughagower, and it would not be necessary to take a person born in Westport to Aughagower to be baptized. She also said that her aunt, Mrs. Hayes, did not look to be over fifty at the time of her death.

Counsel for defendant first insist that as the only positive and direct testimony with respect to the age of the insured at the time she took out the certificate in question is to the effect that she was over 60 years of age, the court erred in failing to direct a verdict in favor of defendant.

Sister Jaronima first testified that she was 65 years of age. Upon having her memory refreshed by a suggestion from counsel for defendant, she stated that she was born in 1843, which would make her 68 years of age at the time she testified. In answer to several questions respecting the ages of her brothers and sisters, and the time she and certain of them came to America, she said: "I don't know." Whether due to the fact that her memory is impaired by age, or to the fact that her mind has always been concentrated upon spiritual rather than material things, a careful reading of her deposition convinces us that her recollection is rather vague and indefinite, and her testimony, therefore, lacks that certainty necessary to induce conviction. If, however, we fully concede that her deposition establishes the fact that she was 68 years old at the time she testified, yet she also says that her sister, Katie, was "just two years" younger. What day in the year 1843 she was born does not appear. If she was born during the latter part of that year, and her sister was born just two years later, her sister was not 60 years of age at the time the certificate of insurance was issued. Sister

Jaronima's testimony, therefore, still leaves the matter in doubt.

It may be conceded that if the baptismal certificate was properly admitted, it is strong evidence in favor of defendant's position that the insured was over 60 years of age when she took out the policy. The certificate shows that Kittie Heraghty was baptized on December 12, 1844. If Kittie Hegarty is the same person as Katie Heraghty, the insured, then the insured was a few months past the age of 60.

Section 1638, Kentucky Statutes, provides:

"A copy from the record book of any court, or of any register of births and marriages, or other instruments or writing, or a copy of any law or ordinance of any State, nation, province, colony, city or town out of the United States, if the same shall have been registered in due form, according to the laws of such sovereignty, certified and attested by the keeper of such records or register, and the attestation, certified under his official seal, by any consul, *charge d'affaires* or minister of the United States resident within the sovereignty where the record is kept, shall be evidence in this State."

In the case of Faustre v. Commonwealth, 92 Ky., 34, the interpretation of this statute was before the court. Faustre had been indicted and convicted of bigamy. The trial court permitted to be read in evidence what purported to be a record of a certificate signed "H. S. Crews, Inspector of Vital Statistics," showing that there was in the returns of marriages made to the Registrar General of the Province of Ontario, by the Registrar of the Municipality of Niagara Falls, in the county of Welland, for the year ending the 31st day of December, 1881, and was then duly of record in the books of that department, an entry to the effect that Albert Edwin Foster and Caroline Louisa Eichenberger were married September 19, 1881, by Rev. James Gordon, by license. The further statement was made that the certificate was granted under section 23 of chapter 40 of the Revised Statutes of Ontario, 1887, entitled "an act respecting the registration of births, marriages and deaths." The certificate was dated at "Registrar General's office, Toronto, May 1, 1891," but no seal of office was affixed to it. As a part of the record there was a certificate signed by the United States Consul at Toronto, Canada, with his seal of of-

fice attached, to the effect that H. S. Crews, whose signature was made to the preceding certificate, was, at the time, Inspector of Vital Statistics in the Province of Ontario, and that full faith and credit were due his official acts. After quoting the section of the statute, supra, the court said:

"According to the plain language of the statute, to make a copy of the register of the marriage of the accused in Canada competent evidence against him, it must appear not simply from the certificate of an officer, though he be keeper of the record, but proved by distinct testimony, that his marriage was registered in due form according to the laws of that sovereignty. No such proof was made in this case, and, consequently, to admit the record without, would be giving to it an effect that we do not know it would be even entitled to in Canada, where it is kept. As we think such proof is an indispensable condition of the competency of the record as evidence in this case, it was error to the prejudice of the accused to admit it to show the essential fact of such marriage."

In the case at bar no witness testified, either orally or by deposition, that the baptism of Katie Heraghty was registered in due form according to the laws of the sovereignty of Ireland, or even according to the customs of the Catholic Church. After giving the entry, the parish priest simply certified that it was a true copy of the entry in the register of baptism in the Parish of Aughagower. The certificate of the notary to the effect that the copy "is correct, and certified in due form according to the general custom in use in Ireland," is not sufficient to dispense with the necessity for direct testimony showing that the insured's baptism was registered in due form according to the laws of Ireland. We, therefore, conclude that the certificate of baptism was improperly admitted in evidence. With this evidence rejected, the weight of the evidence is to the effect that the insured was under 60 years of age when the insurance was taken out, and the failure of the court to give the peremptory asked for by the defendant was not error.

The court, in instruction No. 1, after setting out the statement of the insured to the effect that she, at the time of making the application, was between 44 and 45 years of age, told the jury to find for the plaintiff un-

less they believed that when said statement was made, if it was made, the statement was substantially untrue, and that the defendant, the Royal Neighbors of America, acting reasonably and in accordance with the practice usual among fraternal insurance socities under similar circumstances, would not have accepted the application and issued the certificate if the substantial truth had been stated, etc. Counsel for defendant insists that the court erred in failing to qualify the above instruction by the additional words, "even though the jury should believe that such untrue answer, if such it was, was not made with a knowledge of its falsity, or with the intention to mislead or deceive the defendant company." While we have held in a number of cases that it was proper to include the above qualification in an instruction, we conclude that, under the facts of this case, it was not prejudicial error to refuse to do so. Under the instructions given, the jury were authorized to find for the defendant if they believed from the evidence that the statement made by the insured with respect to her age was substantially untrue, and that the defendant, acting reasonably and in accordance with the practice usual among fraternal insurance societies, under similar circumstances, would not have accepted the application and issued the certificate, if the substantial truth had been stated. Thus it will be seen that a verdict for the defendant was authorized if the statement made by the insured with respect to her age was material, and substantially untrue, and this without regard to her knowledge of its falsity or any intention on her part to mislead or deceive the company. In other words, there was nothing in the instruction given to suggest to the jury that knowledge of the falsity of the statement, or intention on the part of the insured to mislead or deceive the company, was necessary to absolve the defendant from liability, if, as a matter of fact, the statement was substantially untrue and material. That being true, we cannot see how the result was affected by the failure of the trial court to include in the instruction the qualification contended for.

Judgment affirmed.