## GUERRA v. SAN ANTONIO SEWER PIPE CO.

(Court of Civil Appeals of Texas. San Antonio. Feb. 4, 1914.)

1. EVIDENCE (§ 366*)—FOREIGN RECORDS—ADMISSIBILITY.

A copy of a record of birth kept in a foreign country is inadmissible in evidence, without proof of the existence of a law in the foreign country requiring the keeping of such records.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1521–1539; Dec. Dig. § 366.*]

2. EVIDENCE (§ 366*)—DOCUMENTARY EVIDENCE—COPIES.

A copy of a record of birth kept in a foreign country is inadmissible in evidence, where there is no proof of the genuineness of the original record or of the copy.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1521–1539; Dec. Dig. § 366.*]

3. APPEAL AND ERROR (§ 970*)—EVIDENCE (§ 498½*)—OPINION EVIDENCE—ADMISSIBILITY.

The question of the admission of evidence of the opinion of a nonexpert witness rests

largely in the discretion of the trial court, and its ruling will not be disturbed unless it clearly appears that such discretion has been abused.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3849–3851; Dec. Dig. § 970;* Evidence, Cent. Dig. §§ 2290, 2291; Dec. Dig. § 498½.*]

4. EVIDENCE (§ 501*)—OPINION EVIDENCE—NONEXPERT WITNESS.

While a nonexpert witness cannot ordinarily give opinion testimony which does not rest upon facts stated by him, or is not acquired through the use of his senses, the witness need not always state the facts upon which his opinion rests, it being sufficient that he had the means and opportunity for knowledge; for many matters of evidence are incapable of expression except in terms of opinion.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2292–2305; Dec. Dig. § 501.*]

5. EVIDENCE (§ 474½*)—OPINION EVIDENCE—ADMISSIBILITY.

A witness who was negotiating with a foreigner through an interpreter may, where it appears that the negotiations had been continued for a considerable length of time, give his opinion as to whether the foreigner made intelligent replies to his inquiries.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2220–2233; Dec. Dig. § 474½.*]

6. TRIAL (§ 255*)—INSTRUCTIONS—NECESSITY.

In a personal injury action plaintiff cannot complain that the court's charge did not apply the law of proximate cause to the facts of the case, where no specific charge on that point was requested.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 627–641; Dec. Dig. § 255.*]

7. APPEAL AND ERROR (§ 882*)—PERSONS ENTITLED TO ALLEGE ERROR.

A party cannot complain of the giving of an instruction prepared by his own attorneys.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3591–3610; Dec. Dig. § 882.*]

Appeal from District Court, Wilson County; F. G. Chambliss, Judge.

Action by Ladislao Guerra against the San Antonio Sewer Pipe Company. From a judgment for defendant, plaintiff appeals. Affirmed.

Luther A. Lawhon, J. E. Canfield, and James A. King, all of Floresville, for appellant. Houston, Boyle & Storey and Terrell, Walthall & Terrell, all of San Antonio, for appellee.

MOURSUND, J. Ladislao Guerra, by next friend, sued the San Antonio Sewer Pipe Company, the Texas Clay Works, the San Antonio & Aransas Pass Railway Company, and W. S. Dickey, alleging that on February 3, 1912, he was a minor, 18 years of age, and an employé of said Sewer Pipe Company and the Texas Clay Works as a common laborer, under the direction and control of George Garcia, a foreman, who on that date ordered plaintiff to go on top of a box car and unloose the brake, in order that the car might be rolled down the track; that plaintiff did so, and while upon said car it was run into by another car which had negligently been left standing by said foreman, and plaintiff was thrown from the car, and both arms broken and was otherwise injured. The Sewer Pipe Company answered by general demurrer, general denial, pleas of contributory negligence and assumed risk, and that injury was caused by a fellow servant, also that if plaintiff was injured, he had been fully settled with by said company and had been paid $175 in full for all claims on account of his injuries, and had executed a release therefor. By supplemental petition plaintiff denied that defendants had settled with him, and alleged that when the purported release was signed by him he was in an unconscious state, and was at the time a minor, and therefore incapable of executing a valid release. The railway company answered by demurrer, general denial, and plea for judgment over against the Sewer Pipe Company in case any judgment should be obtained against such railway company. W. S. Dickey, personally and under the name of the Texas Clay Works, answered, and adopted the answer of the Sewer Pipe Company. The trial resulted in a verdict and judgment in favor of defendant. Plaintiff appealed.

[1, 2] By the first assignment of error complaint is made because the court refused to admit in evidence an instrument reading as follows: "In the name of the republic of Mexico and as judge of the civil state of this place do make known to all who may see the present and certify be true that in the Book No. S of the Civil Register, which is in my care, corresponding to the year 1893, at page 28, is found an act of the following tenor: On the margin: Ladislao Guerra. Act Fifty-Nine. In the village of Marin on the 5th day of the month of May of the year 1893—one thousand nine hundred ninety-three—before me, the judge of the civil state, there came Don Cruz Guerra, 50 years of age, by occupation a stockman, and said that on the 4th of the present month, at 5 o'clock p. m., at his house in this town, a child was born who was named Ladislao Guerra; the same was presented to me in this office as legitimate son of Ladislao Guerra, the legitimate son of this affiant and the deceased, Mrs. Agapia Cantu, and of his wife, Dona Saturnina Guerra, 24—twenty-four—years of age, legitimate daughter of Don Melchor Guerra, and Dona Anastacia Lazano, all settlers and living in this village. All of which in compliance of the law I have made present by these presents, which I read to the affiant in the presence of the witnesses, Don Jose Maria Garza and Don Simon Martinez, of lawful age, farmers of this vicinity, who did not sign with me, the judge, because they did not know how.

"Jesus Gonzales. [Seal.]

"Garza, Simon Martinez, Rubrics."

"This is a copy of the original, and concurs in all with it and is found in the book and page cited. Marin, April 13, 1912."

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

The assignment is not followed by any proposition, and it is doubtful whether it meets the requirements necessary to constitute it a proposition, as it urges no reason why the ruling constituted error, other than pointing out that the testimony would have been beneficial to plaintiff. However, we conclude there was no error in the court's ruling.

This instrument was not accompanied by proof of the existence of any law of the republic of Mexico requiring the keeping of such records. There was no proof of the genuineness of the original record by facts and circumstances, or by any person able to testify thereto. The evidence does not disclose who is the proper custodian of such record, and who is authorized to certify to copies thereof. If the law be proved, and the genuineness of the record, an examined copy can be used, or a certified copy, but in the latter case the genuineness of the signature of the officer certifying thereto must be properly authenticated. Greenleaf on Evidence, § 488; Elliott on Evidence, § 1366; Bryant v. Kelton, 1 Tex. 435; Phillips v. Lyons, 1 Tex. 392; Smith v. Smith, 1 Tex. 625, 46 Am. Dec. 121; In re Peterson's Estate, 22 N. D. 480, 134 N. W. 751; Royal Neighbors v. Hayes, 150 Ky. 626, 150 S. W. 848; Florsheim v. Fry, 109 Mo. App. 487, 84 S. W. 1023; Wilcox v. Bergman, 5 L. R. A. (N. S.) note, page 943. The instrument, being offered without any such proof as would entitle it to admission, was properly excluded by the court.

[3-5] By the second assignment appellants complain of the admission of certain testimony of Gus Ermler. Defendant had proved by Garcia that Ermler was present during the conversation between Garcia and plaintiff, which occurred about 4½ hours after plaintiff was injured, and that upon said occasion Garcia, Bradford, the claim agent, and Ermler were with plaintiff about an hour before he signed the release pleaded by the Sewer Pipe Company. Ermler testified that he and Garcia and Bradford went to where plaintiff was, and asked him what kind of a settlement they could get out of him, and offered him $150, which he refused to accept, saying that he did not think it was enough, so they figured out the time he would be delayed and his board and doctor bills, estimating the amount he should receive at $150, but he refused to accept it; that then they raised their bid $25, and he accepted same; that, not having enough money to pay the $175, Ermler went back home and got a check for $90 or $95 to make up the $175; that when he came back Garcia told him plaintiff had refused to accept the amount; that the lady there had talked him out of it, so Bradford told Garcia to ask plaintiff if he did not think the amount was sufficient; that he, Ermler, was about 12 feet from plaintiff at the time, Bradford and Garcia being betwen him and plaintiff; that Garcia set next to the bed and did the translation; that finally plaintiff agreed to take the amount offered; that the release was read and explained to plaintiff, Bradford reading it in English, and Garcia translating it word for word. Then Ermler was asked the questions: (1) Whether or not plaintiff, at the time and during all the time of such conversation, was in possession of his mental faculties and knew what he was doing. To which he answered: "I think he was. He was. (2) State whether or not during the time you were in the room the questions which Garcia asked were intelligently replied to, or not, by the plaintiff." To which he answered: "How was that? (3) While you were in the room, as I understand it, Mr. Garcia talked to the plaintiff? Answer: Yes, sir. (4) During the talk he asked him various questions? Answer: Yes, sir. (5) State whether or not in making replies to those questions plaintiff made intelligent replies. Answer: He did. (6) State whether or not you judge from the answers he made that he understood the questions being asked. Answer: Why, yes."

The assignment is not followed by a proposition, but as it makes the point that Ermler, being a layman, had not stated the facts upon which to base his opinion as to the condition of plaintiff's mind, and, in the absence of such statement of the facts, his testimony was incompetent, we will treat the assignment as a sufficient proposition in itself, and consider the same. The extent of Ermler's knowledge of the Spanish language is not disclosed by the record. It appears that Garcia translated, but whether this was for the benefit of both Ermler and Bradford, the claim agent, does not appear. Probably Ermler was not proficient in the language, or he would have talked to plaintiff without the aid of Garcia. However, the extent of his knowledge of the language, it occurs to us, was very material as affecting the weight of his testimony. But, even though he did not understand the language, we think he had stated sufficient facts to qualify him to express his opinion on the matters asked him, to which objection was made. He was in the the room a considerable time, as he testified that his absence for the purpose of getting the check did not last over 20 or 30 minutes, and his estimate of the total time of the visit was 1½ hours. He heard the plaintiff carry on a conversation with Garcia, and saw plaintiff during the time. No man situated as Ermler was, and hearing what he swore he heard, could fail to form some opinion as to whether plaintiff understood the questions asked him, and knew what he was doing. "It is in the province of the court to decide whether the facts on which a nonexpert witness' opinion as to the testator's sanity is based entitles him to express his opinion to the jury." Lawson on Expert and Opinion Evidence, page 555. The determination of this question is left largely to the discretion of the trial court, and its ruling will not be disturbed unless it clearly appears that such discretion has been abused. Ryder

v. State, 38 L. R. A. 738, note; Byrd Irrigation Co. v. Smyth, 157 S. W. 262.

The reasons for receiving nonexpert opinions in evidence are well expressed in the following quotation from the opinion of the Supreme Court of Connecticut in the case of Atwood v. Atwood, 84 Conn. 169, 79 Atl. 59, 37 L. R. A. (N. S.) 591: "An opinion of a nonexpert witness which does not rest upon facts stated by him, or is not acquired through the use of his senses, may not be laid in evidence. Turner's Appeal, 72 Conn. 305, 315, 44 Atl. 310. The witness may state the facts on which the opinion rests. He is not required to do so. He must show that he had the means and opportunity for knowledge. His opinion without this foundation is inadmissible. When, however, a subject is relevant to the matter in suit, and the lay witness has had the means and opportunity of acquiring knowledge of the subject through the use of his senses, and the impression or opinion is formed from constituent facts and conditions which are so numerous or so complicated as to be incapable of separation, or so evanescent in character they cannot be fully recollected or detailed or described or reproduced, so as to give the trier the impression they give the witness, or so as to enable the trier to draw a fair inference from such facts and conditions, he may be permitted to testify to the impression or conclusion obtained by him from them, leaving it to the cross-examination to develop the foundation for the impression or conclusion. Spencer's Appeal, 77 Conn. 638, 643, 60 Atl. 289; Turner's Appeal, 72 Conn. 305, 315, 44 Atl. 310; Chamberlain v. Platt, 68 Conn. 126, 130, 35 Atl. 780. The exceptional witness may be able at times to describe the eye or the action of a man; but he cannot convey distinctly to another the appearance of the man to him unless he may give the impression made upon him, or the conclusion reached by him, from the man whom such acts and look portray. We cannot express in words the facts and conditions which lead us to the opinion that one is under the influence of hate or love, pain or pleasure, hope or fear. We cannot describe exactly our own emotions, sentiments, and affections, much less those of another. Memory may retain no single detail, indeed one may never have recognized a single detail, yet the appearance of the man may have left upon the minds an indelible impression as to his physical and mental condition. Clear before him is the picture of what he saw—a man healthy or sick, strong or fragile, well, or poorly, changed in health for better or worse, composed or nervous, excited or despondent, tired or exhilarated, intellectual or weak-minded, conscious or unconscious, suffering or happy. In truth, that which we call opinion is fact. The impression or conclusion is the sum of what he saw, and in its final analysis the offer is to prove a fact, and not an opinion. 3 Wigmore, Ev. § 1918; Turner's Appeal, 72 Conn. 305, 315, 44 Atl. 310."

We are of the opinion that the court did not abuse the discretion vested in him in holding Ermler qualified to express an opinion on the matters covered by the questions objected to. Appellant cites the cases of Railway v. Brantley, 26 Tex. Civ. App. 11, 62 S. W. 96; Haney v. Clark, 65 Tex. 93; Galloway v. Railway, 78 S. W. 32, in support of his contention. These cases are not regarded by us as sustaining the contention that it was error to permit Ermler to give his opinion. The assignment is overruled.

[6] By the third assignment it is insisted that while the court defined proximate cause, it did not apply the law of "proximate cause" to the facts of the case. The charge in two paragraphs, wherein liability was to be considered because of Garcia's orders, and the railway company's failure to lock the rear car, is more favorable to appellant than if recovery had been limited to acts proximately causing injury. In paragraph 16, submitting liability because of the act of Armabeda, a fellow servant, the law of proximate cause is applied. Appellant was not injured in any way by the omission complained of. However, if he desired a more specific charge on any point it was his duty to request it. Railway v. Hughes, 73 S. W. 976; Railway v. Mangham, 29 Tex. Civ. App. 486, 69 S. W. 80; Lumber Company v. Meyers, 94 S. W. 140; Railway v. Culpepper, 19 Tex. Civ. App. 189, 46 S. W. 922; Telegraph Co. v. Griffin, 27 Tex. Civ. App. 306, 65 S. W. 661.

[7] In this case the record disclosed that appellant's attorneys prepared the charge, and that as to this particular matter no change was made therein by the court, and therefore appellant cannot complain. Railway v. Kurtz, 147 S. W. 661.

Judgment affirmed.